agreed price was the price alleged of which we have before made mention.

According to defendants, plaintiffs had agreed to sell them all their cypress timber in a region of swamp country well known by the name of "Pigeon." It was further agreed, they say, that the timber was to be removed when they would locate the lands and find labor to get it out for them.

This was not plaintiffs' account of the agreement, and on this point there is material difference between plaintiffs and defendants. Plaintiffs contend for a short term within which the defendants were to remove the timber, and defendants that they were to have a time more reasonable than plaintiffs are now willing to admit within which to remove the trees.

The record discloses that the swamp land in question had been abandoned by plaintiffs. The timber, as they must have thought, had all been removed. They allowed it to go to the state for taxes, and from the state it passed to the levee board. Within the year after the land had been adjudicated to the state, one of the defendants called on one of the plaintiffs, and it was agreed that defendants would redeem the land and remove the timber therefrom for their account, they to pay the price before mentioned.

They were at this work when, in August, 1901, they were notified by plaintiffs after that date not to cut, circle, trail, or remove any timber from lands belonging to plaintiffs. We understand the defendants complied with this notice, except as to the trees which had been circled by them, trailed, and prepared to be removed, on which, in this work, they had expended a considerable sum.

Plaintiffs had the right to consider the contract as one which had some limit within which to take away the trees, yet it devolved upon them to bring it to a close without the necessity of causing a loss to those with whom they had contracted. They knew they were working on these lands after the float or high water, which plaintiffs claim was to be the last float to remove the trees. They said nothing to defendants, and some time after gave them the notice before mentioned.

In view of the facts and circumstances of the case, defendants had the right to remove the trees as they did on which they had worked while the agreement was in force,

and when the plaintiffs had not signified the least intention to terminate it. We think it was fair and just that these trees should go to defendants.

The onus of proof was with plaintiffs originally. They did not choose to allege the contract and submitted their side of the case without once referring to this contract.

In making out their defense, defendants invoked the contract which plaintiffs had sought to ignore. This verbal contract was then submitted by plaintiffs, who, by way of rebuttal of defendants' testimony, sought to show terms different from those to which defendants had testified.

The onus of proof had not changed. It still devolved upon plaintiffs to sustain their demand (or claim) by preponderance of proof, and to sustain their position regarding this contract. This they have failed to do. The facts and the circumstances point the other way. The time was not as limited as plaintiffs contended. It devolved upon them, as first parties to the contract, to have it well understood that it was to be as they now contend it was. In the absence of special terms, we are inclined to the view which enables defendants to recover back their expenses in preparing these trees for the market.

In the condition the case comes before us, we understand that defendants challenge the correctness of plaintiffs' statement regarding the term of the contract.

One (plaintiffs) as witnesses affirm, the other (defendants) deny. All parties being of good standing, we accept the conclusion usually arrived at in such cases, and in this case that conclusion is further sustained by the opinion of the district judge who saw and heard the witnesses.

The judgment is therefore affirmed.

---

(34 South. 701.)

No. 14,561.

MORIARTY v. BAGNETTO et al.

(June 22, 1903.)

ACTION ON LEASE—DEFENSES—SURETY—
RELEASE.

1. Where a person binds himself in solido with a lessee for the obligations of a written lease, waives discussion and division, and, when sued thereon, judicially admits that he became a

party to such lease and to the rent notes given in accordance with its provisions, and there is nothing to show that he contracted in any other capacity than as appears, the defense that, as surety, he is discharged by reason of the prolongation of the terms of payment granted by the lessor to the lessee, cannot be sustained.

(Syllabus by the Court.)

Certiorari to Court of Appeal, Parish of Orleans.

Action by Daniel Moriarty against Thomas Bagnetto and others. Judgment for plaintiff was affirmed by the Court of Appeal, and defendant Fitzpatrick appeals. Dismissed.

John Patrick Sullivan, for applicant. McCloskey & Benedict, for respondent.

### Statement of the Case.

MONROE, J. Plaintiff, by written contract, leased certain premises in New Orleans to B. Bonell for one year from October 1, 1899, at an annual rental of $480, for which the lessee gave 12 notes of $40 each, payable monthly. Upon March 10, 1900, the following agreement was indorsed upon the lease so made, to wit:

"It is this day understood and agreed that Mr. Thomas Bagnetto Sr. will assume this lease and the notes made by Mr. Bonell * * * from March 1st, 1900, to the expiration thereof, for the same rental, $40 per month. And now comes Mr. John Fitzpatrick who says that he will bind himself, in solido with said Mr. Thomas Bagnetto Sr., for the faithful performance of all his obligations as well under this lease as under any express or implied renewal thereof, waiving the benefit of discussion or division.

"[Signed]    John Fitzpatrick.
"Thomas Bagnetto Sr.
"Daniel Moriarty.
"Per Louis Schuler, Agt."

The outstanding notes which had been issued by Bonell were also signed by Bagnetto, and were indorsed by him and by Fitzpatrick, and Bagnetto took possession of the leased premises, and paid the rent for March, when it fell due. He, however, failed to pay the rent for April, and demand therefor was made upon Fitzpatrick, who refused to pay it on the ground that he was released from his obligations in the premises by reason of the lessor's having granted Bagnetto an extension of time, without his consent. And thereafter, though Bagnetto continued to occupy the premises, no rent was paid. In November, 1900, plaintiff brought suit on the lease and the unpaid notes, praying judgment against Bagnetto and Fitzpatrick in solido. Bagnetto made no appearance, and there was judgment against him by default. Fitzpatrick answered, admitting "that on or about the 10th day of March, 1900, he became party to the said lease and notes assumed on the said date by Bagnetto, codefendant." And he further answers alleging "that the first note that fell due was paid by the said Bagnetto, but that when the second note became due the plaintiff's agent granted to the said Bagnetto an extension of time—definite time—of fifteen days, more or less, within which to pay the said note, without notifying the defendant, thereby making a new contract with the said Bagnetto, to which defendant was not a party, and, according to the provisions of the Civil Code, thereby releasing the defendant John Fitzpatrick from any liability under said lease."

He subsequently filed an amended answer, in which he alleges that he "signed the lease and notes * * * in the capacity of surety for the said Thomas Bagnetto, Sr., and, reserving the benefit of the original answer, * * * wherein defendant John Fitzpatrick claims to have been discharged from liability by reason of the extension of time for fifteen days, granted to the defendant Thomas Bagnetto, Sr., * * *" he prays to be dismissed.

Upon the trial in the district court the plaintiff objected to the introduction of evidence in support of the allegations of the amended answer, but the objection was overruled, and certain testimony was admitted tending to show that plaintiff's agent had granted a definite extension of time for the payment of the April rent. There was, however, no evidence offered to show that Fitzpatrick signed the contract sued on in any other capacity or subject to any other conditions than as expressed upon the face of that instrument. And there was judgment for the plaintiff condemning the defendants in solido, as prayed for in the petition.

In the reasons assigned, the judge a quo, referring to the amended answer and to his ruling permitting it to be filed and admitting

evidence in its support, says: "In so far as it seeks to explain the original answer, as containing a plea of discharge of a surety because of a definite prolongation of the time of payment granted to his principal, it is clearly open to the objection urged against it that it changes the substance of the defense, and must be disregarded as having been improperly allowed."

He further says, inter alia:

"But the exclusion of the amendment in no wise impairs the defense, because, after a careful analysis of the evidence of record, I have been unable to gather from it anything else than a request by Bagnetto for a few days' grace when the April note was presented to him for payment, and an assent by plaintiff's agent, Schuler, to such request. * * * There was no agreement to wait until a day fixed, preventing Moriarty, the creditor, from suing Bagnetto, the debtor. * * * My opinion, therefore, is that, even if the supplemental answer be considered as not altering the original defense, and if Captain Fitzpatrick be viewed as an ordinary surety, entitled to invoke the protection of article 3063, he has failed to show a state of facts justifying his release from his obligation."

The learned judge then expresses the opinion that under Civ. Code, art. 3045, the defendant having specifically bound himself, in solido, with the principal debtor, and having renounced the benefit of discussion, does not occupy the position of an ordinary surety, but that his obligations are to be determined by the law applicable to debtors in solido. He, however, prefers, in view of the decision of this court in Jones v. Fleming, 15 La. Ann. 522, to rest his judgment upon the ground first stated. From the judgment so rendered Fitzpatrick alone appealed, and he is now before this court asking for a review of the judgment of the Court of Appeal affirming the judgment appealed from.

### Opinion.

There is no intimation in the written instrument sued on to the effect that Fitzpatrick intended to bind himself as, or to reserve to himself any of the rights of, a surety. On the contrary, the language reads:

"And now comes Mr. John Fitzpatrick, who says that he will bind himself in solido with the said Mr. Thomas Bagnetto, as well under this lease as under any express or implied renewal thereof, waiving the benefit of discussion or division."

Beyond this, in his original answer, defendant "admits that he became a party to the said lease and notes," and whilst, in his amended answer, he alleges for the first time that "he signed the lease and notes * * * in the capacity of surety," and (under a ruling which was subsequently reconsidered) evidence was admitted in support of that answer, no evidence was offered in support of the particular allegation mentioned, or to show that the relations of the parties were, or were intended to be, other than as appears from the language of the instrument signed by them. Inasmuch, therefore, as upon the face of the papers, and according to his judicial admissions, the defendant bound himself in solido as a party to the contract sued on, and not as a surety, it is immaterial whether the extension of time was granted to his co-obligor, as alleged by him or as alleged by the plaintiff.

In the case of Jones v. Fleming, 15 La. Ann. 522, to which the judge a quo refers, the defendant alleged that he had signed the note sued on as surety, and was discharged because time had been granted to the principal debtor without his consent, and it was held that the defense was made out on the fact as well as on the law, from which we conclude that evidence must have been admitted to show that the defendant had contracted as surety. Whether it was proper to admit such evidence, or whether, it being admitted, and thereby shown, that the defendant, as surety, had bound himself in solido with the principal debtor, it was correctly held that he was discharged by reason of the prolongation of the term of payment granted to the latter, it is unnecessary, for the purposes of this case, to inquire, since, as we have seen, the present defendant bound himself as a party to the contract sued on, and expressly waived those rights to which, as a surety, he might have been entitled.

Holding these views, we find it apart from the case to consider what the defendant's rights might have been if he had bound himself as surety.

For these reasons the judgment which has been made the subject of review is left un-

disturbed, and it is ordered, adjudged, and decreed that this proceeding be dismissed, at the cost of the applicant.