## No. 6300.

## JOSEPH A. HINCKS vs. FRANK C. HOFFMAN AND AUGUST SCHMEDTJE.

### Syllabus.

Whether one who signs a lease is a party liable *in solido* with the lessee or a mere surety is a question of fact to be determined by the terms of the lease or by the intention of the parties.

The lease contains the following clause: "It is further agreed that the omission of either the lessors or lessee to give written notice, the one to the other, two months prior to the expiration of this lease, of his or their intention not to renew it shall operate its renewal upon the same terms and conditions for the period of one year from the date of its expiration." Held; this is a lease only for the period mentioned in the contract, and not for such additional time for which it might be renewed by the silence of the lessor and lessee.

Held, further: that when the lessor and lessee both omitted to give the notice above provided the lease was tacitly renewed for one year under the contract, in the same manner that it would have been renewed for one month under the law. That the tacit renewal under the contract created a new contract, for which the surety on the original lease was not liable.

Suretyship is of strict law, and must be restrained as to time, person, and amount within the plain terms of the contract.

Appeal from the Civil District Court for the Parish of Orleans, Divisions "B," and "E," No. 104,175. Honorables G. H. Theard and F. D. King, Judges.

C. J. & D. H. Theard, for plaintiff and appellee.

D. B. H. Chaffe, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court as follows:

This is a suit against August Schmedtje based on the following contract, viz:

"Jos A. Hincks * * * hereby leases to Frank C. Hoffman * * * the premises known as No. 121-123 Decatur Street * * * for the term of one year commencing on the first day of October, 1911, and ending on the 30th day of September, 1912, at the rate of twelve hundred dollars per annum, payable monthly,

— 219 —

on the first day of each and every month as evidenced by twelve rent notes made by the lessee to the order of lessee and endorsed by himself and surety for the sum of one hundred dollars each and payable respectively, one on the first day of Nov., 1911, and one on the 1st day of every succeeding month, until the expiration of this lease, except the last note, which is made payable on the 30th day of September, 1912. * * * It is further agreed that the omission of either the lessors or lessee to give written notice, the one to the other, two months prior to th expiration of this lease, of his or their intention not to renew it shall operate its renewal upon the same terms and conditions for the period of one year from the date of its expiration.''

''Signed and dated in the City of New Orleans in the State of Louisiana on the 1st day of September, 1911.

(Signed) ''Jos. A. Hincks.
''Frank 'C. Hoffman.''

''And now comes August Schmedtje, who hereby makes himself party to this contract of lease, and obligates himself with the lessee **in solid**o for the faithful compliance with all the conditions on the part of the lessee to be performed.''

(Signed) ''A. Schmedtje.''

This lease is endorsed: ·

''Lease of Frank 'C. Hoffman, 121-123 Decatur Street from October 1-11 to Sept. 30-12; 1 yr. at $1200. Two pencil lines are run through the figures ''12,'' and the figures ''13'' are written below, also in pencil. ·

The petition alleges ''that on September 1, 1911, petitioner leased to Frank C. Hoffman the premises known

— 220 —

as Nos. 121-123 Decatur Street * * * for the term of one year from October 1, 1911, at the rate of $100 per month. That said lease provided that the failure of either the lessor or lessee to give written notice the one to the other, two months prior to the expiration of the lease, of the intention not to renew it, should operate its renewal, upon the same terms and conditions for the period of one year from the date of its expiration. * * * That no notice was ever given by the lessor or by the lessee for the termination of the said contract of lease, which, under its very terms as above set forth was therefore renewed for the additional period of one year from October 1st, 1912. * * * That the rent of said premises * * * for March, 1913, was not paid by the lessee when due on April 1st, 1913, and petitioner prays for judgment for $700.

Defendant avers that he was never liable for any time beyond one year ending September 30th, 1912, and that he refused to sign as surety for another lease which had been tendered to him at the expiration of the lease which he signed.

The testimony is that the lessor and the lessee omitted to give any notice the one to the other two months prior to the expiration of the lease of their intention not to renew the lease. This omission operated a renewal of the lease, in the language of the lease, "upon the same terms and conditions for the period of one year from the date of its expiration," say September 30th, 1912.

The testimony also is that some time after the date on which this notice should have been given and before the first day of October the plaintiff prepared a new lease together with twelve rent notes, and presented them to Mr. Hoffman for his signature and that of the defendant

Schmedtje; Hoffman kept them for about a week and then told plaintiff that "Schmedtje was unwilling to endorse the notes," and also "refused to sign the lease," and thereupon plaintiff tore up the lease and threw it upon the floor. Although it is averred in the petition that "petitioner notified Schemdtje verbally" of the renewal of the lease, and "that the said Schmedtje acknowledged his liability in accordance with the terms of the lease," plaintiff admits that he "never saw Schmedtje in his life," and "never had any dealings with him at all." It is admitted that in the bankruptcy of Hoffman "Hincks declared that the obligation of Hoffman was guaranteed by Mr. Schmedtje in his proof of claim."

Mr. Schmedtje testified that Mr. Hincks sent him a new lease which he refused to sign, that he never agreed to be responsible for any rent subsequent to September, 1912; and that he signed the "contract entered into between Mr. Hincks and Mr. Hoffman as surety for the rental of the property 121-123 Decatur Street."

There was judgment for plaintiff, and defendant has appealed.

Plaintiff relies for the affirmance of the judgment upon three propositions, viz:

1st. That the defendant Schmedtje was not a mere surety on the lease, but was in fact a party to it bound in solido with the lessee.

2nd. That the lease was not for one year only, but was in reality for two years.

3rd. That the continuation of the lease after September 30, 1912, or the tacit, automatic renewal of the same for one year from that time, was not a new lease as in the case of the exercise of a privilege to renew, but was only a continuation of the old lease.

# I.

The first proposition rests upon the case of **Moriarity vs. Bagnetto, et al., 110 La., 598.** In that case Bagnetto had assumed the lease and the notes made by Bonell, and John Fitzpatrick bound himself **in solido** with Bagnetto for the performance of all his obligations under the lease. In that case the Court said, page 602:

> "No evidence was offered in support of the particular allegation mentioned, or to show that the relations of the parties were, or were intended to be, other than appears from the language of the instrument signed by them. Inasmuch, therefore, as upon the face of the papers, and according to his judicial admissions, the defendant bound himself **in solido** as a party to the contract sued on and not as a surety, it is immaterial whether the extension of time was granted to his co-obligor, etc."

In the present case the language of the lease specifies that the rent notes are endorsed by the "surety;" the answer of the defendants specifies that "he bound himself as surety for the defendant F. C. Hoffman;" the admission of plaintiff is "that the obligation of Hoffman was guaranteed by Mr. Schmedtje;" and the testimony of the defendant is that he signed as surety. The whole testimony leads us to the conclusion that the parties understood that Schmedtje was signing as a surety.

# II.

We believe it is too plain to admit of controversy that the lease was for one year only. The contract so states in unambiguous terms; "for the term of one year commencing on the 1st day of October, 1911, and ending on

the 30th day of September, 1912," and other expressions equally clear.

The special clause relied on is an affirmance rather than a contradiction of this position. "The omission of either the lessors or lessee to give written notice, the one to the other, two months prior to the expiration of this lease, of his or their intention not to renew it shall operate its renewal upon the same terms and conditions for the period of one year from the date of its expiration." We interpret this clause to mean that "the expiration of this lease" was, in the language of the lease, "the 30th day of September, 1912," and that the "renewal for the period of one year" commenced on the same date. If there could be any doubt of the correctness of this conclusion, the construction put upon the lease by the plaintiff himself furnishes its most reliable interpretation. **C. C., 1956 (1951).** On or about September, 1912, the plaintiff prepared "a new lease" "identical in terms with the lease of the previous year" and presented it for the signature of Hoffman and Schmedtje. If he had understood that the lease was for two years, there would have been no necessity for a new lease. He might have asked for twelve additional notes, but not for another lease. Besides, the petition alleges that the lease was "for the term of one year." The renewal for an additional year consequent upon the silence of the parties did not make it a lease for two years. **25 S. E. Rep., 417.**

### III.

Parties who lease premises either fix a period for its duration or they do not. If they do not, the lease is presumed to be made by the month. If they fix a period for

its duration they must abide by the agreement. In both instances, if the lessee continues in the possession of the premises after the expiration of the month, or after the expiration of the lease, there is formed a tacit reconduction, or a new lease by the month only.

> C. C., 2685 (2655) to 2689 (2659), 1817 (1811);
> C. N., 1738; 30 A., 255; 20 A., 190; 11 A., 477;
> 9 A., 352; La., 17; 6 R., 162; 2 La., 403.

The only difference therefore between the law and the contract of lease under consideration is that, under the law, the silence of the parties operates a renewal of the lease for one month, while under the lease, their silence renewed it for one year.

> 8 Ct. of Ap., 258, Morris Bldg. Ass'n. vs. Hughes.

Now, the law, in case of the silence of the parties, provides that when the lessee continues in possession after the expiration of his lease, "the security which may have been given for the payment of the rent shall not extend to the obligation resulting from the lease being thus prolonged."

> C. C., 2690 (2660); C. N., 1740.

This article contains a general principle. We fail to perceive what difference there is between th tacit renewal of a lease for one month under the law, and the tacit renewal for one year under a contract. It seems to us that if the law has provided that the surety shall not be liable for its tacit renewal for one month, a **fortiori** shall he not be responsible for its tacit renewal for the longer term of one year.

Thus it has been held that: "where a lease has been given for one year with the privilege of renewal for five years, and a third party binds himself as surety for the

lease, and the lease is renewed at the expiration of the year, the surety is not bound on the extended lease, unless it is shown that he consented to the extension.''

Fasnacht vs. Winkelman, 21 A., 727.

But plaintiff's counsel seeks to differentiate this case from his by saying that ''the reason (of the above case) is very plain and scientifically correct'' because in the above case the lessee took advantage of an option and enterered into a ''new contract'' of lease, while the renewed lease in this case took place ''without the creation of a new contract.'' In this assumption we believe he is mistaken.

### 3 Pothier Vo. Louage, No. 342, p. 373, says:

''La reconduction est un contrat de louage d'une chose; contrat qu'on presume etre tacitement intervenu entre le locateur et le conducteur, lorsqu' apres l'expiration du temps d'un precedent bail le conducteur a continue de jouir de la chose, et que le locateur l'a souffert. Cette reconduction n'est donc point le precedent bail qui continue mais un nouveau bail forme par une nouvelle convention tacite des parties, lequel sucede au precedent.''

This construction explains article C. N., 1740, and our Civil Code 2690 (2660).

The Code Napoleon has adopted this expression of opinion when it says:

### C. N., 1738:

''Si a l'expiration des baux ecrits, 15 preneur reste et est laisse on possession, il s'opere un nouveau bail,'' etc.

See also, **Bowles vs. Lyon, 6 R., 264.**

In support of his position plaintiff's counsel quotes many cases from other States.

> Salisbury vs. Hale, 12 Pickering, 419; Rice vs. Loomis, 139 Mass, 302; Coe vs. Vodgse, 71 Pa. St., 383; Decker vs. Gaylord, 8 Hun., 110; Webb vs. Bailey, 33 S. W., 935; Orton vs. Noonan, 24 Wisc., 279; Swan vs. St. Paul, 75 N. W., 594; Thiebaud vs. First National Bank, 42 Ind., 212; Rutgers vs. Hunter, 6 Johns Ch., 215; Renaud vs. Daskam, 34 Com., 515; Andrews vs. Marshall, 92 N. W., 706; Chretian vs. Doney, 1 Comstack, 419; Dix vs. Atkins, 130 Mass., 171; Callahan Co. vs. Michael, 90 N. E., 642; Carter vs. Brooklyn Life Ins. Co., 17 N. E., 396; Kedey vs. Petty, 54 N. E., 798; Strouse vs. American Co., 46 Atl., 328.

But these decisions merely contain the opinions of Judges, while we must be guided by the statutory provisions of our Code and by the authoritive expressions of authors from whose writings the Code was framed. Besides there is no lack of differences of opinion in other States upon this question.

But apart from the provisions of our Code it seems to us that the case is with the defendant. Suretyship is a dangerous, ungrateful, and unilateral contract, with no prospect for the surety, as a general rule, but loss. For that reason our Code provides: **C. C., 3099 (3008):**

> "Suretyship cannot be presumed, it ought to be expressed, and is to be restrained within the limits intended by the contract."

> **C. N., 2015.**

> "Fidei jussio est strictissimi juris."

In 47 **U. S.**, (6 How.) 292, McMicken vs. Webb, the Court said:

"Neither a Court of law nor equity will lend its aid to effect sureties beyond the plain and necessary import of their undertaking. This is the doctrine of this Court, of the State Courts and of England."
(P. 298.)

In **Miller vs. Stewart, 22 U. S., 680 (9 Wheaton)** Justice Story said (p. 701):

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract * * * and Courts of equity as well as of law have been in the constant habit of scanning the contracts of sureties with considerable strictness."

**Dalloz Codes Annotes on Art. 2015, p. 1116:**

No. 91: "Dans tous les cas, s'il y a doute, le juge doit se pronencer pour le sens restrictif de l'obligation de la caution."

No. 92. "Juge de meme le cautionnement doit etre interprete d'une maniere restrictive et dans le sens le plus favorable a l'oblige."

"When a collector is appointed and furnishes a security his security is only answerable for that single appointment and not for his appointment in the ensuing year."

See authorities quoted in **9 Wheaton, 694; 27 Am. & Eng. Enc. Law, pp. 534, 535; 48 A., 251 (255).**

Courts cannot be too guarded in holding parties bound by special and unusual clauses inserted in long printed contracts which may have escaped the attention of par-

ties signing them; and unless those clauses involve a clear liability which the parties must have understood they will not be bound by them. Any doubt must be interpreted in favor of the debtor.

A surety can only be held liable in accordance with the plain and precise terms of his contract. If the plaintiff had intended that the surety should be bound also for the "renewal" of the lease arising from the silence of the parties, it would have been easy, and it would have been the plaintiff's duty, to add a clause to that effect in the lease which would have conveyed to the surety, in unmistakable terms, the extent of his undertaking.

C. C., 1956 (1951), 1957 (1952), 1961 (1956).

**C. C., 1958 (1953):**

"But if the doubt of obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted whether he be obligor or obligee."

"Any doubt as to the intentions of the parties to a contract of lease, arising out of uncertain terms of the contract, will be construed in favor of the lessee. It is the business of the lessor to have the agreement expressed in clear and certain terms."

3 Brewst (Pa.) 537, 61 Ill. App., 315; 24 Cyc., 991 (17); 961 Note 65, p. 990.

The plaintiff calls upon the Court to add that clause which will hold the defendant for the renewal of the lease. But the Court cannot add any words to a contract. The defendant might justly say he did not subscribe to that contract. Nor can this Court see that this clause was necessarily implied. The surety made himself a "party

to the contract of lease." What lease? Plainly of the lease which we have construed to be a lease for one year. Therefore we cannot hold him liable for any time beyond that year.

It is therefore ordered that the judgment of the District Court be reversed and that there now be judgment in favor of defendant, August Schmedtje, dismissing plaintiff's suit at his cost in both Courts.

Opinion and decree, March 1st, 1915.

Rehearing refused, April 19th, 1915.

Writ denied, May 25th, 1915.