Plaintiff is a commercial co-partnership engaged in the manufacture and sale of lumber in the City of Shreveport. Defendant is a resident of that city and when the cause of action herein sued upon arose, was therein engaged in the construction business. He entered into a contract with G.T. Gibbs, Jr., to build complete, furnishing all materials and labor therefor, a residence in said city for the price of $5,400. He purchased the lumber and other material therefor from the plaintiff on open account as he had done in several other transactions of the kind. The parties contemplated from the beginning that when finished the building and lot whereon erected would be mortgaged by Gibbs to the Federal Housing Administration, hereinafter referred to as the F.H.A., and the proceeds of such loan paid over to defendant and by him to plaintiff. This method of business dealings was followed by plaintiff and defendant in other instances.
Following the completion of the building, Gibbs, on August 14, 1940, gave to defendant his sixty-day open note for $5,400, which he endorsed and delivered to plaintiff. We are inclined to believe it was carried as collateral to defendant's account, but the record is not clear on the question.
The mortgage to the F.H.A. was consummated on or about the 25th day of September, 1940. On that day a check for the proceeds of the loan, $4,514.33, was issued by the F.H.A. in favor of plaintiff, defendant and Gibbs. It was, after being endorsed by defendant and Gibbs, turned over to plaintiff and was credited for its full amount on defendant's account. No entry of the credit was made on the note. However, the payment was treated as a credit thereon and properly so. This left a balance due on the note of $885.07, plus 8% interest from the note's maturity.
On August 8, 1941, plaintiff instituted suit against Gibbs to recover judgment for this balance, reserving its right against defendant. Prior to trial of the case *Page 836 
Gibbs and plaintiff reached an agreement to the effect that upon payment of $500 by Gibbs he would be released from further liability to plaintiff and the suit dismissed. Plaintiff, on January 26, 1942, after payment of said amount, issued to Gibbs a written receipt therefor in which it is stated that the payment was accepted "in full settlement and satisfaction of all claims and rights it may have against the said G.T. Gibbs, Jr., as the holder and owner of that certain promissory note executed by the said G.T. Gibbs, Jr., dated August 14th, 1940, in favor of F.Y. Ashford, in the original amount of $5,400.00." It is also said in the receipt: "but expressly reserving all of its rights against F.Y. Ashford, the original payee and endorser of the above described note." Nonsuit was thereafter taken in the case.
The present suit is against defendant, payee and endorser of the note, to recover judgment for $385.67, plus 8% interest from August 14, 1940, and attorneys' fees. The amount for which sued is the principal balance on the note after allowing credit for the payment of $4,514.33 and $500, above mentioned. The petition sets forth the two payments and the circumstances of their having been made.
Defendant filed an exception of vagueness and a motion for bill of particulars. The court's action thereon is not here complained of. Defendant then answered and coupled thereto a call in warranty upon G.T. Gibbs, Jr., and a reconventional demand. Gibbs' exceptions to the call in warranty as disclosing neither a cause nor a right of action, were sustained. Exceptions of no cause and no right of action directed against the reconventional demand were also sustained, and the demand dismissed. No complaint is here urged as to the court's ruling in either instance.
The defenses to the merits, reflected from the answer, are two-fold, and not consistent, to-wit:
1. That plaintiff has released defendant "as endorser of said note inasmuch as it settled in full with the maker thereof without the consent of the defendant," he being a party secondarily liable thereon.
2. That defendant accepted the note from Gibbs at plaintiff's request, and: "that said note was endorsed over to plaintiff with the understanding that same would be accepted in full settlement of any and all amounts that was due and that may become due in connection with the construction of the house built by defendant for the maker of said note."
And further that plaintiff knew that a loan was to be procured from the F.H.A. and that the proceeds of such loan "was to cover the amount of the note in full", whether sufficient in amount to discharge the note or not; that plaintiff agreed that if said note was gotten from Gibbs and endorsed over to it, defendant would "not be held liable for any amount over and above what was actually secured from the loan"; that if defendant is held liable for the balance due on the note, after the release of the maker, and is required to pay said balance, irreparable injury to him will result because, to that extent, defendant's right to hold the maker will have been destroyed.
The inconsistency in the urged defenses lies in this: Defendant alleges that under the agreement with plaintiff when he got the note from Gibbs, endorsed and delivered it to plaintiff, his liability thereon ceased, regardless of the amount of the proceeds of the expected loan; and, secondly, he pleads that plaintiff's release of Gibbs legally operated release for him. To express the situation more tersely, he avers that he was never bound to plaintiff on the note but had been by plaintiff's subsequent action released from liability thereon although not originally bound. The defenses are not urged alternatively.
Anticipating that plaintiff would in whole or part rely upon subsection 5 of Section 120 of Act 64 of 1904 (N.I.L.) to repel his defense, defendant attacked the constitutionality of that subsection on the grounds that it violates the constitutions of the United States and of this state in that it impairs the obligation of a contract; deprives a person of property without due process of law, Const.La. 1921, art. 1, § 2, art. 4, § 15; Const.U.S. art. 1, § 10, cl. 1 and Amends. 5 and 14; and opens the door for the practice of fraud upon "innocent parties secondarily liable on negotiable instruments."
The note in question by its positive and unequivocal language binds all persons whose signatures are affixed thereto or thereon, whether as maker, endorser or guarantor, in solido for its payment. When defendant endorsed the note as payee and delivered it to plaintiff for value, he, quoad the plaintiff, became in solido bound with Gibbs, the maker, for its full payment, unless through collateral agreement his liability was abrogated. *Page 837 
The note involved in Bonart v. Rabito, 141 La. 970, 76 So. 166, 172, in terms and conditions was practically the same as that in the present case. The only difference between them was that the holder, Bonart, was also the payee. Here, the holder is not the original payee but a third person. The original payee has become the endorser. The law applicable to each case is the same. In the Bonart case the court inter alia said:
"In Moriarty v. Bagnetto, 110 La. 598, 34 So. 701, before the adoption of the Negotiable Instrument Law, it was recognized that a person might be bound only as an indorser and surety for the principal debtor, and at the same time be bound primarily and in solido with the principal debtor to the creditor or payee, and that in that situation the indorser or surety was not released from liability by an extension of the time of payment of the debt granted by the payee or creditor to the principal debtor, without notice to the indorser or surety."
The case was followed specifically in Succession of Gravolet, La.App., 193 So. 218, 220.
The right of a holder of a negotiable instrument to release one of the persons thereon solidarily bound, without thereby impairing his rights against others likewise bound is definitely recognized and provided for in various articles of the Civil Code; but to preserve his right against the obligors not released, express reservation of rights as against them must be made at the time release is given. Article 2203 of the Civil Code on this question reads as follows:
"The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter."
See, also, Fridge v. Caruthers, 156 La. 746, 101 So. 128; Cusimano v. Ferrara et al., 170 La. 1044, 129 So. 630; Williams et al. v. De Soto Bank Trust Co. et al., 189 La. 245, 246,179 So. 303.
It was held by the court in J.I. Case Threshing Machine Company v. Bridger, 133 La. 754, 63 So. 319, that none of the provisions of the N.I.L. abrogated or repealed Article 2203 of the Civil Code.
However, should it be conceded, arguendo, that defendant's liability on the note was secondary, under the plain provisions of subsection 5 of Section 120 of Act 64 of 1904 (N.I.L.) he was not released through the effect of the transaction between plaintiff and Gibbs. The referred to subsection reads as follows:
"By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved".
The release issued to Gibbs by plaintiff leaves little or no doubt, as was expressly held by the lower court, that the interest of no one in the note save that of plaintiff was intended to be affected thereby. It simply means that no further suit by plaintiff against Gibbs would lie on the note. Surely there was no intention or purpose in the mind of either party to impair the obligation beyond reduction of its principal amount to the extent of $500 and to release Gibbs from further liability to plaintiff. And as defendant has received credit on his account for this payment he has no just ground for complaint unless his right to recover from Gibbs the amount for which he is sued herein was thereby destroyed. We do not think it was. If he is liable to plaintiff for this amount on account of his endorsement on the note, surely Gibbs' responsibility to him is co-extensive therewith. Gibbs, the maker, lacks this much of having paid defendant the contract price for building his home. It was beyond the power of plaintiff and Gibbs, had they so desired, to effectuate any agreement, compromise or release whereby defendant's rights against the latter would be impaired or abrogated. This being true, whatever else might be said of the plea of unconstitutionality, it is now moot.
In view of the conclusions we have reached on the issue of defendant's automatic release from liability on the note because of Gibbs' release, we feel that logically we have done all that the peculiar facts of the case required of us because the issue of release vel non was squarely tendered and it having been resolved adversely to defendant there is really no good reason why we should now address ourselves to the inconsistent issue that at no time was defendant bound to plaintiff on the note. However, it is likely counsel intended, but inadvertently failed to plead the first issue alternatively, and in view of *Page 838 
this possibility we have decided to discuss and pass on the other issue also.
It will be observed from the above extracts from the answer that in one breath defendant says plaintiff, as per agreement, accepted Gibbs' note in full discharge of his liability for price of material, and in another breath he says that plaintiff agreed to accept the proceeds of the loan in full settlement of the note whether of equal amount or not. If this were true, then Gibbs was also released from liability on the note when the proceeds of the loan were paid to plaintiff. But he has made no such contention. If the note was to be extinguished by the proceeds of the loan, regardless, then both Gibbs and defendant were entitled to its possession from plaintiff, marked "paid"; yet, we see Gibbs paying $500 for a release from liability to plaintiff.
It was the rule between plaintiff and defendant to require notes of the persons for whom defendant constructed residences of material furnished by plaintiff prior to financing them through the F.H.A. At time of trial plaintiff held several of such notes on which defendant was endorser. So, in requiring the note in this case no innovation was instituted.
Defendant does not contend that either of the members of plaintiff partnership, its manager or other officer having authority so to do, made the agreement with him as to non-liability on the note after delivery thereof to plaintiff. He and his bookkeeper do say that a Mr. Brandau, plaintiff's bookkeeper, agreed that if the note was gotten and delivered to him for plaintiff's account, defendant would not be held responsible thereon. Brandau, at time of trial, was in prison on a charge of stealing money from plaintiff and did not testify. Mr. Sam P. Weaver, plaintiff's manager, testified that no one having authority to do so, agreed to release defendant from liability on the note and expressly denied that Brandau had such authority. He also denied that he or any other person having authority to do so agreed to accept the proceeds of the loan in full satisfaction of the note.
It is a strong circumstance against defendant that he unqualifiedly endorsed the note before delivering it to Brandau for plaintiff's account. Then was the appropriate time to have protected himself against liability on the note in plaintiff's hands had he believed he had the right to do so.
Before Gibbs' proposition to plaintiff was accepted, its terms and conditions were communicated by letter to defendant. Plaintiff therein said:
"* * Before definitely accepting Mr. Gibbs' offer, however, we wish to give you an opportunity to purchase the Gibbs note for a sum in excess of $500, which sum will, of course, be applied against your indebtedness to us.
"Should you fail to act on this offer promptly, we shall close with Mr. Gibbs in accordance with the terms outlined above and credit the amount realized upon your indebtedness to us. * * *".
Defendant, although he admits receiving the letter, made no reply to it, verbally or otherwise. If he considered himself absolved from liability on the note, this was a highly opportune time to have said so.
It is unthinkable that plaintiff, a large business firm of many years' experience, would have agreed to accept the proceeds of the contemplated loan from the F.H.A. in satisfaction of the note or its account against defendant. No one could tell in advance how much said proceeds would be and surely no business man would have made such an unusual and financially dangerous agreement that defendant would have us believe plaintiff made. Why make such a concession when the building and lot could have been subjected to lien in plaintiff's favor for the price of its materials?
It is apropos here to quote from the opinion in William B. Thompson Co. v. Sporl et al., 160 La. 352, 107 So. 135, 138, to-wit:
"In Snell et al. v. Union Sawmill Co. et al., 159 La. [604], 608, 105 So. [728], 729, we said emphatically: `Signatures to obligations are not mere ornaments,' citing Boullt v. Sarpy, 30 La.Ann. 494, 495; and Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281; also, Murphy v. Hussey, 117 La. 390, 399, 41 So. 692. And parties who sign negotiable instruments, or other solemn obligations, must expect to be held liable according to the tenor thereof."
Defendant has signally failed to establish his special defense. The lower court expressly so held and we fully agree with its conclusion. The judgment appealed from is affirmed with costs. *Page 839