## CENTRAL FINANCE CO., Inc., v. MARTIN et al.*
## No. 14913.

Court of Appeal of Louisiana.   Orleans.
Oct. 29, 1934.

Arthur Miller, of New Orleans, for appellants.

Lemle, Moreno & Lemle and Bernard J. McCloskey, all of New Orleans, for appellee.

LECHE, Judge ad hoc.

On November 2, 1932, defendants, James M. Martin and John F. Blackwell, together with W. L. Rodgers, signed and executed the following promissory note:

"$355.05      New Orleans, La., Nov. 2, 1932.

"For value received, we, the makers, endorsers, guarantors, sureties and each of us in solido promise to pay to the order of Central Finance Co., Inc., at its office, in the City of New Orleans, Louisiana, Three Hundred Fifty Five & 05/100 Dollars, with eight (8%) per cent interest per annum from maturity until paid, in 15 equal installments of $23.67 each, the first installment payable Dec. 2 and the remaining installments monthly thereafter.

"Failure to pay any installment of this note when due or to fulfill any of the obligations herein, undertaken shall ipso facto without demand or notice, mature all remaining installments on this note, together with interest, costs, and attorney's fees as hereinafter set out.

"The makers of this note and the endorsers, guarantors, and sureties hereon hereby severally waive presentment for payment, demand, notice of non-payment, protest and all pleas of division and discussion, and agree that the time of payment hereof may be extended from time to time, one or more times without notice of such extension or extensions and without previous consent, hereby binding themselves in solido unconditionally and as original promissors for the payment hereof, in principal, interest, costs and attorney's fees.

"No delay on the part of the holder or holders hereof in exercising any right hereunder shall operate as a waiver of said right.

"Should this note not be paid at maturity or when due or demandable as herein provided, or should it become necessary to employ an attorney to enforce the same or recover the amount hereof or any portion of same or should this note be placed in the hands of an attorney for collection or compromise or for any other reason, the makers, endorsers, guarantors, and sureties and each of them hereby agree severally and in solido to pay the fee of such attorneys which fees are hereby fixed at fifteen per cent on the amount then due on this note, with interest and costs, said fee in any event to be not less than $15.00.

---

"At or after the maturity of this note, or when same becomes due under any of the provisions hereof, any money, stocks, bonds or other property of any kind whatsoever, on deposit or otherwise to the credit of the maker, endorsers, guarantors or sureties on the books of the holder or holders of this note, in transit or in their possession, may, without notice, be applied at the discretion, of said holder or holders, to the full or partial payment of this note.

"In the event that the undersigned, or any of them, should fail in business, or become insolvent, or be adjudged bankrupt, or proceedings in involuntary bankruptcy or for the appointment of a receiver should be filed against them or any of them, this note, and every other debt, liability, or obligation due by the undersigned or any of them, to the holder or holders of this note, shall immediately become due and payable without demand, or notice, or putting in default.

"And each of us, the undersigned, does hereby waive all benefits from homestead exemption and any other exemptions to which the undersigned or any of them may be entitled, under the laws of any State of the United States now in force or hereafter adopted, as against this obligation or in the renewal thereof.

| "Addresses: | Signatures: |
|---|---|
| "DeSoto Hotel | W. L. Rodgers |
| "Monteleone Hotel | J. M. Martin |
| "823 St. Louis St. | John F. Blackwell" |

Eight complete installments were paid in accordance with the terms of the note and only the sum of $.12 was paid on account of the ninth installment which fell due on August 2, 1933, thereby maturing the entire balance. The payee, Central Finance Company, Inc., then brought this suit against defendants for the balance due on said note including interest, costs, and attorney's fees. Defendants filed exceptions of no cause or right of action and a plea of prematurity together with their answer to the petition. Judgment was rendered below in favor of plaintiff, and defendants have appealed therefrom.

W. L. Rodgers, comaker with defendants on the note, filed a petition in bankruptcy in the United States District Court for the Eastern Division of the Southern District of Mississippi at Meridian, Miss., and in due course the referee in bankruptcy confirmed his proposal for an extension under section 74 of the Bankruptcy Act (11 USCA § 202).

Section 204 of chapter 8, title 11, United States Code Annotated, reads as follows:

"Extensions extended to persons secondarily liable for debt; evidence of confirmation of extension. Extensions made pursuant to the foregoing provisions of this chapter shall extend the obligation of any person who is secondarily liable to any person for the prompt payment of such debt or debts, or any part thereof, and a copy of the order confirming such extension, certified as required by the provisions of law with reference to judgments and proceedings in courts of the United States, shall be sufficient evidence that such extension has been confirmed in any suit or proceeding brought against any such person so liable. (July 1, 1898, c. 541, § 76, as added, Mar. 3, 1933, c. 204, § 1, 47 Stat. 1474)."

Pursuant to the above section of the Bankruptcy Act, defendants produced and filed in evidence a copy of the order issued in the bankruptcy proceedings confirming the extension granted to Rodgers. It is conceded that Rodgers received all the funds advanced as consideration for the note and that defendants were only accommodation makers, consequently, the entire defense is based on the proposition that defendants are secondarily liable within the meaning of the above-quoted section of the Bankruptcy Act and, therefore, entitled to the extension granted by the provisions of that section to persons secondarily liable.

Section 192 of Act No. 64 of 1904 (Negotiable Instruments Law) reads as follows:

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable."

Section 29 of the same act reads:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Section 60 of the same act reads:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."

There is no question that defendants signed as makers or comakers on the note, as the note itself clearly shows this. They did not sign on the reverse side and there are no

qualifications attached to their signatures. Under section 192 of the Negotiable Instruments Law, quoted above, they are primarily liable on the face of the papers, because by the terms of the instrument they are "absolutely required to pay same." Does then the fact that defendants signed the note only as an accommodation for Rodgers make them secondarily liable?

In the case of Bonart v. Rabito, 141 La. 970, 76 So. 166, 167, suit was brought by the payee against the endorser of a promissory note signed by a third party. The face of the note read in part as follows:

"Six months after date, for value received, we the signers, indorsers, guarantors, and sureties, and each of us in solido, promise to pay to the order of Sam Bonart the sum of three hundred and fifty dollars, at the Commercial-Germania Trust & Savings Bank, New Orleans, with interest at the rate of 8 per cent. from maturity until paid."

One of the questions in that case was whether in view of the terms of the note the indorser was primarily or secondarily liable. The court said:

"Although the defendant is, as to the maker of the note, only an indorser or a surety, entitled to recourse against the maker if she pays the note, nevertheless, as to the payee, she is primarily liable, in solido with the maker, as thoroughly and completely as if she had put her signature under that of the maker on the face of the note. In the very able and exhaustive briefs filed in this case we are unable to find any provision of law, and we know of no principle of public policy, that forbids an indorser of a promissory note to bind himself to all the stipulations that are expressly declared on the face of the note to be binding upon an indorser. It cannot be presumed that one who has put his signature on the back of a promissory note did not first read or have knowledge of what was written or printed on the face of the note. When this note was presented to the defendant for her indorsement, the instrument informed her that whoever would indorse the note would thereby become liable to the payee in solido with the maker, and would waive presentment for payment, demand, notice of nonpayment, and protest, all pleas of division or discussion, and would thereby consent that time of payment might be extended without notice thereof. With that information, and with full knowledge of the consequence, she indorsed the note. And now she asks to be released from her obligation merely because she was only an in- dorser, and not a maker, of the note, notwithstanding she declared, by indorsing the note, that it was as an indorser or a surety for the maker that she made herself primarily liable to the payee, in solido with the maker."

The Bonart Case has been cited on a number of occasions and never overruled. It holds that a mere indorser is primarily liable to the payee in accordance with the language contained on the face of the note. It could not reasonably be contended that a comaker is in a better position in this respect than an indorser. In fact, the reasoning of the court relative to the primary liability of an indorser applies with greater force and logic to a maker. This is clearly shown when, in speaking of the indorser, the court said: "Nevertheless, as to the payee, she is primarily liable, in solido with the maker, as thoroughly and completely as if she had put her signature under that of the maker on the face of the note." (Italics ours.)

In the case of Wolstenholme v. Smith et al., 34 Utah, 300, 97 P. 329, 331, suit was brought against a comaker who set up the defense that his comaker and codefendant was the principal debtor and that he received no part of the consideration for which the note was given, and that he signed only as surety. After quoting sections 29, 60, and 192 of the Negotiable Instruments Law, which are identical with the same sections of our law, above quoted, the court said:

"Under the new law the appellant's apparent engagement as a maker and principal debtor is his real and actual engagement. He signed the note as a maker. By the terms of the instrument, he is absolutely required to pay it. The statute in such case makes him an actual principal and renders him primarily liable, though in fact he received, with the knowledge of the holder, no part of the consideration, and only signed the note for the purpose of lending his name to another. Having signed the note as an apparent maker and principal debtor, he cannot thereafter be heard to assert the contrary so as to affect his liability on the instrument."

In the case of Union Trust Co. v. McGinty, 212 Mass. 205, 98 N. E. 679, 680, Ann. Cas. 1913C, 525, in dealing with the point in question the court said:

"The obligation of all makers, whether for accommodation or otherwise is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. Sections 77 and 208. The Act makes no provision for the proof of another and different relation than that expressly

undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time of making that the maker was an accommodation maker. * * *

"The act establishes a liability on the part of an accommodation maker, which is not affected by an extension of time given by the holder to any other party to the note, even though as between such party and the accommodation maker a .different relation may subsist in fact from that appearing on the face of the paper. The result is to render somewhat more rigid the rights of the parties as set forth in the written instrument, and so far as the holder is concerned to establish liability to him upon a firm basis, not easily shaken by parol evidence."

We are, therefore, of the opinion that there is no question as to the primary liability of defendants to the payee and plaintiff in this suit; consequently, defendants are not secondarily liable within the meaning of that section of the Bankruptcy Law, hereinabove quoted, which extends the obligation of any person who is secondarily liable.

The judgment appealed from is affirmed.

Affirmed.