## CONTINENTAL BANK & TRUST CO. v. BOUTERIE et al.*

### No. 1634.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

*For opinion on rehearing, see 170 So. 507.

Talley & Richardson, of Bogalusa, and Marcus & Corkern and C. C. Sessions, all of New Orleans, for appellant.

Benj. W. Miller, of Bogalusa, for appellees.

OTT, Judge.

On March 16, 1932, Anthony Fiorenza and the two defendants in this suit, A. S. Bouterie and O. P. Hymel, signed a note as comakers payable to the order of the Continental Credit Corporation for the sum of $195.74, with 3½ per cent. interest per month, payable in 19 monthly installments, beginning one month after date. The note bound the makers, signers, indorsers, guarantors, sureties, and each in solido for the payment of the said note. The note contained the following additional provisions on its face: "Failure to pay any installment of this note, or to fulfill any of the obligations herein undertaken, shall ipso facto without demand or notice, mature all remaining installments on this note, together with interest, costs and attorney's fees as hereinafter set out. The makers of this note and the endorsers, guarantors and sureties hereon, hereby severally waive presentment for payment, demand notice of non-payment, protest and all pleas of division and discussion, and agree that the time of payment hereof may be extended from time to time, one or more times without notice of such extension or extensions and without previous consent, hereby binding themselves in solido, unconditionally and as original promissors, for the payment hereof, in principal, interests, costs and attorney's fees. No delay on the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights. Should this note not be paid at maturity or when due or demandable as herein provided, or be placed in the hands of an attorney for collection or. compromise, the makers, endorsers, guarantors, and sureties and each of them hereby agree jointly, severally, and in solido to pay the fee of such attorneys, which fees are hereby fixed at fifteen per cent (15%), on the amount then due on this note, with interest and costs, said fee to be not less than ten dollars ($10.00).

This note and any extension or renewal thereof shall be secured by the pledge of the securities or property listed and described hereinabove and/or on the reverse hereof."

The note shows on its face that it is secured by a mortgage on one Chrysler sedan automobile. The paraph of O. E. Brock, a notary public, identifies the note with an act of chattel mortgage passed before him on the same day the note was executed. On the back of the note appears the indorsement of the Continental Credit Corporation, by Waldo Pitkin, vice president, and also the indorsement of the Continental Bank & Trust Company, by Waldo Pitkin, assistant cashier.

The copy of the chattel mortgage annexed to the petition shows that Anthony Fiorenza alone signed the chattel mortgage. The suit is against Bouterie and Hymel as comakers, but plaintiff reserves all of its rights against the estate of Fiorenza who is now dead. The plaintiff asks for recognition of its chattel mortgage on the property described in the act of mortgage, but, as Fiorenza is the only party to the act of mortgage and as he is not a party to the suit, it follows that no adjudication can be made in this suit with reference to the chattel mortgage.

The two defendants filed a joint answer making what, in effect, is a general denial of the allegations in the petition. They allege by way of a special defense, that they signed said note for the accommodation of Fiorenza, and they received no consideration whatever therefor, all of which was well known to its agent, O. E. Brock; that shortly after said note was signed by them for the accommodation of said Fiorenza, they received notice from said agent advising them that Fiorenza was in arrears on said note, whereupon they called on said local agent of plaintiff and requested that action be taken against Fiorenza; that shortly thereafter Fiorenza sold the automobile which secured said note; that on learning of the sale of the automobile, they requested plaintiff's agent to seize the car and enforce the chattel mortgage, but the said agent refused to do so; that because of the laches and negligence of said agent in enforcing said note and mortgage against Fiorenza, his assets have been sold and placed beyond the reach of his creditors, and they have been deprived of any chance of recovering anything from the real maker of the note. They aver that by reason of the acts of plaintiff's agent, they have been released from liability on said note.

Judgment was rendered by the trial court sustaining this special defense, and rejecting plaintiff's demand against these two defendants. From that judgment, plaintiff appeals.

It appears that Brock was the local agent of the credit corporation and handled all matters pertaining to the note, including the receipt of payments thereon. Payments were made to him from time to time by Fiorenza, most of which went to pay interest. The balance due on the principal when the suit was filed was $164.63. The last payment credited on the principal is $1 on April 16, 1934. As the note was then long past due and payments were being made to the agent of the original payee, we think the present plaintiff stands in exactly the same situation as the original payee would have stood had it been the plaintiff. However, in view of the conclusion we have reached in the case, this point becomes of no importance.

It is obvious that these two defendants are claiming a discharge on the note on the ground that they are merely accommodation endorsers and therefore only secondarily liable on the note. The laches and negligence of plaintiff through its agent in failing to enforce the obligation against the person primarily liable can rest only upon the theory that these two defendants are secondarily liable as indorsers. The note being negotiable in form is governed by the Negotiable Instruments Law, Act No. 64 of 1904.

Under section 192 of this law the person primarily liable on a negotiable instrument is the person who, by the terms of the instrument, is absolutely required to pay it. All other parties are secondarily liable. Section 120 provides the six different ways by which a person secondarily liable is discharged. Section 29 defines an accommodation party as one who signs the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.

An accommodation maker, guarantor, or indorser may be only an accommodation party as to the principal maker,

entitled to reimbursement from him if he pays the note, yet, as to the payee or holder, such accommodation maker, guarantor, or indorser will be primarily and unconditionally liable, if the note on its face, provides that the makers, indorsers, guarantors, and sureties are liable in solido, and if they bind themselves unconditionally for the payment of the note. This principle has been firmly embedded in our jurisprudence since the leading case on this point of Bonart v. Rabito, 141 La. 970, 76 So. 166.

In that case an accommodation indorser claimed a discharge on the note for the reason that the holder had granted a second extension to the principal debtor without the consent of the accommodation endorser. The note which the accommodation indorser signed contained the provision on its face that the signers, indorsers, guarantors, and sureties, and each of them, in solido, promised to pay the note. The court held that the accommodation indorser was bound by the provisions contained in the face of the note, and as she had bound herself therein unconditionally, she was primarily liable to the holder in the same manner and to the same extent as the real maker.

In the more recent case of Central Finance Company v. Martin et al. (La.App.) 157 So. 149, three men signed a note as makers, which note contained provisions almost identical with the note sued on in the present case. The principal debtor secured an extension under the Bankruptcy Law (11 U.S.C.A. § 202), and the other two signers alleging that they were only accommodation makers, and therefore secondarily liable, claimed the same extension as had been granted the principal debtor under the Bankruptcy Law (11 U.S.C.A. § 204) granting to persons secondarily liable the same extension as is granted the principal debtor. Following the principle announced in the Bonart-Rabito Case the Orleans Court of Appeal held that, inasmuch as the two defendants had bound themselves in solido with the principal debtor and had unconditionally promised to pay the note, they were primarily and not secondarily bound to the holder. Therefore, the granting of the extension to the principal debtor did not relieve them of their unconditional promise to pay the note.

As will appear from the note sued on in this case, these two defendants have bound themselves in solido with Fiorenza, and have unconditionally promised to pay the note. Regardless of whether or not they are accommodation indorsers or comakers they are liable to the holder to the same extent and in the same manner as Fiorenza. They are therefore not in a position to plead as against the holder any other defense than Fiorenza could plead if he were a party to the suit. All three being primarily bound to the holder, they can only be discharged in one of the ways provided for the discharge of a negotiable instrument by a party primarily bound thereon, and cannot avail themselves of the provisions of section 120 of the Negotiable Instruments Act, which section applies to the discharge of parties secondarily liable. Of course, as to the principal maker, Fiorenza, these two defendants may be, and according to the testimony are, accommodation makers, and, if they pay the note, they have their recourse against the principal maker for reimbursement.

As these two defendants do not allege or attempt to prove any fraud or misrepresentation in signing the note, they are bound by all of its terms. Not only did they bind themselves in solido and unconditionally to pay the note, but they also agreed that no delay on the part of the holder in exercising any rights thereunder would operate as a waiver of such rights. As makers, if they felt that the failure of the holder to enforce the mortgage on the car was jeopardizing their interests, they had the right to pay the note and become subrogated to the security. The failure of the holder to take such action did not release these two defendants who were bound in solido with Fiorenza as makers of the note. Morris Plan Bank v. Glockner (La. App.) 161 So. 792.

The evidence shows that there is a balance due on the note as set forth in the petition.

For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Continental Bank & Trust Company, in liquidation, and against the defendants, A. S. Bouterie and O. P. Hymel, in solido, in the sum of $164.63, together with interest thereon at the rate of $3\frac{1}{2}$ per cent. per month from May 16, 1933, until paid, plus 15 per cent. attorneys' fees, and costs in both courts.