**WYATT v. BUCKLEY et al.**

No. 5400.

Court of Appeal of Louisiana.
Second Circuit.

April 1, 1937.

Rehearing Denied April 30, 1937.

H. W. Ayres, of Jonesboro, for appellants.

W. T. Holloway, of Jonesboro, for appellee.

HAMITER, Judge.

Fourteen promissory notes, dated January 27, 1932, were made and signed by defendant F. K. Buckley, and indorsed by one O. E. Corbett, and were payable and delivered to plaintiff, T. C. Wyatt. Each was for the sum of $62.42 and carried interest at the rate of 8 per cent. per annum from maturity until paid. One note was due and payable February 15, 1932, and the remainder were to be paid one each month thereafter. A chattel mortgage executed by the said F. K. Buckley, and covering certain pool hall equipment, secured all of the instruments.

On February 22, 1934, the above-named indorser, O. E. Corbett, died. Surviving him were his widow, Mrs. O. E. Corbett, and two children, Mrs. Vivian Craft and Miss Evelyn Corbett. These survivors accepted and assumed possession and ownership of decedent's estate.

Nine of the above-mentioned chattel mortgage notes were not fully paid at their maturities, and plaintiff, the holder thereof, instituted this suit against the maker and the above-named widow and children of the indorser to enforce collection thereof.

Defendant Buckley answered, admitting the making and signing of the notes, but claiming certain credits not alleged in the petition. In their answer the widow and children admitted the indorsement of the notes by decedent, O. E. Corbett. They averred, however, that practically all of the property mortgaged to secure payment of the notes had been released from the chattel mortgage and was sold by the plaintiff, or by his authorized attorney, all without their knowledge, consent, or authorization; that the property so released and sold was valued in excess of the debt represented by the notes; and that they were discharged from liability under the indorsement.

A trial was had on these issues, and there was judgment in plaintiff's favor against all defendants for the sum of $499.55, with interest and attorney's fees, less certain credits, and with recognition of plaintiff's lien and privilege on the prop-

erty which had not been previously sold. This appeal was prosecuted by defendants Mrs. O. E. Corbett and her daughters, Mrs. Vivian Craft and Miss Evelyn Corbett. Defendant Buckley did not appeal and, consequently, the judgment against him is not before us for review.

As stated by plaintiff's counsel in his brief, the following questions are presented for our consideration:

1. Was the mortgaged property released and sold without the authorization and consent of the widow and children of the endorser of the notes?

2. If it was so released and sold, were they entitled to be discharged from liability to the extent of the value of the disposed of property?

3. What was the value of the property?

These issues will be discussed in the order listed.

■■ The first question, in our opinion, should be answered in the affirmative. It is undisputed that plaintiff placed the notes with his attorney for collection, and granted to him complete authority in the management and disposition of the matter. Acting under this authorization, the attorney signed and executed four separate written instruments, copies of which are in the record, releasing practically all of the pool hall equipment from the operation of the privilege and chattel mortgage, and authorizing sales thereof by defendant Buckley. The contemplated sales were duly consummated. No previous knowledge of these transactions was had, and no consent or authorization was given by the widow and children of the indorser, according to the positive testimony given by Mrs. Corbett and Miss Evelyn Corbett. Defendant Buckley testified that no mention of the proposed disposition of the property was made by him to any of the other defendants. It is true that the testimony of plaintiff's attorney is that he discussed the indebtedness with Mrs. Corbett, and she stated that the whole matter, including the sale of the property, was being left to the discretion of Mr. Buckley. However, the burden of proof with reference to the issue presently under discussion was with the plaintiff, and he has not discharged that burden.

■ We proceed now to a consideration of the legal significance of the above-discussed property disposition. More than a

century ago, our Supreme Court, in the case of Union Nat. Bank v. Wm. H. Cooley et al., 27 La.Ann. 202, sustained a defense that the indorser of a promissory note was released from liability by the fact that the holder, without the indorser's knowledge or consent, disposed of property which had been pledged as security for the note.

The law respecting this subject is stated in 3 Ruling Case Law, verbo "Bills and Notes," § 510, as follows:

"According to the weight of authority the indorser of a negotiable instrument is entitled to any specific security for the payment of the debt which the principal debtor may have given the holder, or which by operation of law the latter may have acquired (e. g., a judgment lien), and if the holder releases or voluntarily destroys such security, the indorser is discharged to the extent that such specific security would have gone to pay the debt * * *."

In the case of Interstate Trust & Banking Co. v. Young et al., 135 La. 465, 65 So. 611, 613, we find:

"The case as to each of the defendants is that of an indorser of a note secured by mortgage. Now, the indorser of a note secured by mortgage has the absolute legal right to have the proceeds of the mortgaged property attributed to the payment of the note. His rights in that respect are exactly those of the holder of the note, for his promise to pay the note is conditioned upon the note being transferred to him, and upon its being so transferred not shorn of its securities, but accompanied by all of them. If the holder impair these securities, he, *to that extent, loses his recourse against the indorser.* * * *

"While it is perfectly true, as contended by plaintiff, that these indorsers promised to pay in case Fenwick Sanitarium did not pay, it is equally true that they so promised on the condition that, if they did pay, they should be subrogated to all the rights of the holder of the indorsed notes, including, of course, among these rights the mortgage which secured the payment of the notes." (Italics ours).

This court held in the case of Smith v. Van Arsdale, 19 La.App. 247, 140 So. 95, that when the holder of notes released certain timber which had operated as security for their payment, the indorser of

such notes, who had not consented to the release, was discharged to the extent of the value of said timber.

The decision in Allen v. Gaar et al., 160 So. 156, decided by us, is to the effect that the action of the note holder in surrendering an insurance policy which secured payment of the note served to relieve the indorsers of their liability.

In support of his contention that the indorser's liability is unconditional and, consequently, is not affected by the impairment of the security, plaintiff's counsel cites and relies on the cases of Atkins v. Dixie Fair Co., Ltd., 135 La. 622, 65 So. 762, and Neosho Milling Co. v. Farmers' Co-op. Warehouse Stock Co., 130 La. 949, 950, 58 So. 825. Those cases, in our opinion, are inapplicable, for it appears that the promissory notes therein involved were unsecured instruments.

Our attention is directed to a provision contained in the notes involved herein that "the endorser waives all pleas of division or discussion." This provision, we think, is not relevant to a decision of the case, for no question of division or discussion is presented by the record.

█ In view of the above-discussed pertinent authorities, we hold that the liability of Mrs. Corbett and her two daughters has been discharged to the extent of the value of the equipment sold.

The testimony in the record pertaining to the value of the disposed of property .was furnished entirely by defense witnesses. Those testifying on this point were Artie Olson, who had been connected with the billiard hall business for about 27 years, the last five of which were spent in the selling of billiard supplies; D. D. Tait, who had operated a pool hall for four years; and the defendant Buckley. A detailed discussion of their testimony will serve no useful purpose. We have thoroughly analyzed and considered the estimates of these witnesses as to the value of the different articles sold, and the conclusion reached by us is that the minimum value for all of such property was $571.

Plaintiff figures the total indebtedness due under the notes, including principal, interest, and attorney's fees, to be $565.84. The computation of. such indebtedness furnished by defendants shows an amount due of $519.22. The value of the property, according to our finding, was in excess of each of the above-suggested totals, and

therefore the widow and two children of the decedent indorser have been entirely discharged from all liability under the notes.

Accordingly, the judgment of the trial court, in so far as it pertains to Mrs. O. E. Corbett, Mrs. Vivian Craft, and Miss Evelyn Corbett, is annulled, avoided, and reversed, and plaintiff's demands are rejected, at his cost in both courts.