STOULIG, Judge.
Plaintiff, First National Bank of Commerce (FNBC), obtained a judgment awarding $25,236.25, plus interest and attorney fees, in a suit on a promissory note and recognizing its right to enforce the provisions of one of the mortgages pledged to secure its repayment. Defendant, Gallery Apartments Corporation (Gallery), has appealed.
The note sued on was one of three originally delivered by Hilbert Loeb as partial security for a $28,500 loan in February, 1969. The Gallery note, signed by Gallery Apartments Corporation through its president Hilbert Loeb as maker, is payable to Bearer in the sum of $40,000 and is secured by a collateral mortgage on Orleans Parish real estate. The other two notes pledged included one payable to Bearer signed by Hilbert Loeb individually and a second payable to Bearer made by Jennie Apartments Corporation (Jennie) through Loeb as president. Both are $40,000 notes and are secured by collateral mortgages.
On June 1, 1969, Hilbert Loeb executed a $50,000 promissory note in favor of his former wife Marian Loeb as part of the property settlement agreement to divide the former community existing between them. It was secured by a collateral mortgage on the Jennie property in Jefferson Parish, which also was part of the mortgaged property involved in the FNBC loan-pledge transaction.
On July 1, 1969, Hilbert Loeb paid $500 of the principal on the February note and executed a renewal note for $28,000. On the reverse side of the instrument the three mortgage notes pledged were described.
On November 26, 1969, Marian Loeb proceeded via executiva in the 24th Judicial District Court for the Parish of Jefferson to seize and sell the Jennie property to satisfy her claim. Prior to sale, FNBC intervened claiming a preference under its earlier mortgage; however, its intervention was compromised by Marian Loeb’s agreement to pay the bank $7,500 to relinquish its alleged preferential claim to payment. The record fails to disclose what negotiations preceded the settlement or why the bank relinquished a preference that would have satisfied its entire claim against Loeb for a lesser consideration.
In any event, on May 26, 1971, the Jefferson Parish property pledged by Jennie Apartments was sold in the foreclosure proceedings at public auction to Marian Loeb for $220,000. The proces verbal states that after all liens and costs were paid there remained the sum of $35,332.91.
*744 Appellant first contends the bank was obligated to satisfy its claim on the $28,000 note as a preferred creditor rather than accepting $7,500 to apply against the loan and subordinate its privilege to Mrs. Loeb, an inferior creditor. In so doing it contends the FNBC relinquished its right to payment.
Defendant cites Lindsley v. Copping[1] to support this proposition; however, it is distinguishable. In Lindsley, the debtor had executed three separate mortgage notes which he delivered to Midtown Investment Company; Gentilly Investment Company; and Copping, Pujols and Copping, a partnership. One of the Coppings had an interest in all three firms. When the debtor made payments to Midtown and Gentilly, specifically designating these payments as such, one of the Coppings applied a part of either or both payments to the third note held by the partnership, contrary to the debtor’s instructions. The court held the payments must be applied to the debts for which they were tendered and the plea of prescription could not be defeated by the unauthorized application of the payments to the note held by Copping.
In this case FNBC did not misapply any funds voluntarily tendered to it by Hilbert Loeb. In fact there was nothing voluntary about the whole transaction. Because Loeb failed to pay his obligation, a creditor (his former wife), foreclosed. Since the property involved was one of the tracts on which the FNBC held a collateral mortgage, the bank intervened. It could have elected not to intervene and look to the balance of its security to insure repayment of the note, or it could have asserted its superior privilege in the Loeb v. Loeb foreclosure, as it did. Whatever action the bank took did not have to be submitted to Hilbert Loeb for approval. If it wished to subordinate part of its pledged collateral, it was free to do so.
Appellant next argues that in compromising its intervention in the foreclosure it not only released its claim under the Jennie mortgage, it also released Hilbert Loeb. Appellant contends: “The discharge of one solidary obligor discharges the others, unless the creditor has expressly reserved his right against the latter.”
This argument is meritless because Hilbert Loeb individually and Gallery Apartments are not solidary obligors. C.C. art. 2082 defines solidary liability as follows:
“When several persons obligate themselves to the obligee by the terms in soli-do, or use any other expressions, which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation in solido on the part of the obligors[.]”
The transaction before us is one of loan where Hilbert Loeb individually borrowed money and signed a promissory note for the sum received. As security, he pledged three negotiable instruments, two executed by separate corporations he controlled and the third by himself individually. Each mortgage secured a $40,000 note and the bank had the option of selecting whatever means was made available to it to recover its funds should the maker fail to meet his obligation on the note. There is no intent to create a solidary suretyship among those ultimately liable on the three pledged notes. C.C. art. 2093 provides an obligation in solido must be expressly stipulated if it does not result by operation of law.
Alternatively, appellant argues that Gallery was discharged after the Jennie foreclosure compromise on the theory that “ * * * a party secondarily liable on a negotiable instrument is discharged to the extent of the value of the security released by the holder.”
*745 The flaw in this argument is that Gallery is not secondarily liable on the $28,000 note of Hilbert Loeb to FNBC. Gallery is not an endorser on the FNBC note. The liability of Gallery stems from a note it signed as maker that was unpaid after maturity and pledged as partial collateral to secure the Hilbert Loeb-FNBC loan.
In the event of default on the principal obligation by Loeb the bank could elect to exercise its rights against any and all collateral securities pledged for its payment up to the full amount of the indebtedness. However, the rights asserted by the bank could not be greater than those vested in its pledgor (the original pledgee), Hilbert Loeb.
In the cases cited by appellant the endorser, in assuming the liability as such, acted from the knowledge that something of value had been mortgaged to secure the payment of the obligation out of which the claim of the holder would first be satisfied before a demand would be made upon him. Therefore if the collateral is sold or released without the endorser’s consent he is entitled to be discharged to the extent of the value of the security released.[2] These facts are not apposite of the instant matter since Gallery is not an endorser.
Appellant thus has failed to advance any valid theory that would exculpate it from liability because of the Marian Loeb-FNBC compromise. Even if the defendant’s contentions had merit, it would be of no avail, for under the expressed provisions of the note the bank reserved the right to release any of the securities pledged without obtaining the consent of the debtor.
For the reasons assigned the judgment appealed from is affirmed at defendant’s cost.

AFFIRMED.

. 215 So.2d 543 (La.App. 1st Cir. 1968).

. See Wyatt v. Buckley, 174 So. 387 (La.App.2d Cir. 1937), and cases discused therein.