O’NIELL, J.
This suit was brought by the payee against the indorser of a promissory note signed by one W. A. Leininger. Here is a copy of the note, annexed to the plaintiff’s petition, viz.:
“$350.00. Due Jan. 1/14.
“New Orleans, July 1st, 1913.
“Six months after date, for value received, we the signors, indorsers, guarantors, and sureties, and each of us in solido, promise to pay to the order of Sam Bonart the sum of three hundred and fifty dollars, at the Commercial-Germania Trust & Savings Bank, New Orleans, with interest at the rate of 8 per cent, from maturity until paid.
“The makers, indorsers, guarantors, and sureties of this note hereby severally waive presentment for payment, demand, notice of nonpayment, and protest, all pleas of division or discussion, and consent that time of payment may be extended without notice thereof, and, in the event of nonpayment at maturity, it is agreed to pay all attorney’s fees incurred in the collection of this note, or any portion thereof, including interest, which fees are hereby fixed at 10 per cent, on the amount to be collected.
“Should the maker of this note fail in business, ask a respite, or become a bankrupt, before the maturity of this note, this note and all the said liabilities shall become and be immediately due and payable without demand or notice, notwithstanding any credit or time allowed the undersigned by any instrument evidencing any of said liabilities.
“At the maturity of this note, or when otherwise due, as above provided, any money, stocks, bonds, or other property of any kind whatsoever, on deposit or otherwise to the credit of the maker or any of the indorsers, on the books of said Commercial-Germania Trust & Savings Bank, or in its possession, shall at once stand applied to the payment of this note, or any other indebtedness, unless it be otherwise paid. [Signed] W. A. Leininger.”
*973 On the back of the note, below the signature of Mrs. A. P. Rabito, are the following memoranda:
“Interest on this note paid to July 1/14.
“Interest on this noto paid to Jan. 1/15.”
The plaintiff acknowledged in his petition that the interest on the note had been paid, and the time of payment extended to the 1st of July, 1914, and that the interest had also been paid, and the time of payment of the principal again extended to the 1st of January, 1915, as shown by the memoranda on the back of the note. He alleged, however, that by the terms of the note the defendant had bound herself in solido with the maker for the payment of the debt; that she, as indorser of the note, had therein expressly consented that time of payment might be extended without notice thereof, and had expressly waived presentment for payment, demand, notice of nonpayment, and protest, and all pleas of division or discussion. The plaintiff alleged in his petition that the maker of the note had gone into voluntary bankruptcy, and was, on his own petition, adjudged a bankrupt on the 24th of November, 1914.
The defendant filed an exception of no cause of action, which, by consent of both parties, and without prejudice to either, was referred to the merits. Reserving the benefit of the exception, the defendant answered, acknowledging her signature on the back of the note, but alleging that she had signed only as an accommodation indorser and without receiving any consideration. She alleged that the debt represented by the note had been contracted several years before, and that a number of notes of the same import had been made; that at the maturity of each note the plaintiff had required that a new note be made and the old note canceled; but that, when the note sued on became due, she refused to reindorse it for the plaintiff, and that he then extended the time of payment, against her will, and re-extended the time, without her consent. She alleged that, after the first extension of the time of payment, the note was not presented to her for payment, no demand was made upon her, nor notice of nonpayment given her, nor was the note protested; and that, by the plaintiff’s omissions in that respect, she was released from all or any liability.
On the trial of the case the plaintiff introduced in evidence only the note sued on and a certified copy of the judgment of the federal court decreeing the maker of the note a bankrupt. The defendant then called the plaintiff to the witness stand to prove by his verbal testimony how long the money had been loaned before the note sued on was executed and how many notes had been previously issued and indorsed by the defendant, and to prove that each of the previous notes had been presented to the defendant for her indorsement. The attorney for the plaintiff objected to the introduction of any verbal testimony to contradict or alter or modify the terms of the written instrument. The court sustained the objection, except to the extent of allowing the defendant’s attorney, if he saw fit, to offer verbal testimony to show whether the agreement for an extension of the time of payment of the note without notice to the indorser permitted only one extension, or more than one extension, without notice to her. The defendant’s attorney then announced that he desired to prove the interpretation put upon the contract by the parties, and the judge replied that his ruling forbade that, and that the written instrument should speak for itself. Reserving a bill of exceptions to the ruling, the defendant’s attorney then offered to prove by the verbal testimony of the defendant the same facts which he had attempted to prove by the testimony of the plaintiff. The plaintiff’s counsel repeated his objection, the court made the same ruling, and another bill of exceptions was reserved by the defendant’s counsel. The case was then submitted on the *975 pleadings and the instrument sued on, and judgment was rendered in favor of the plaintiff for the amount of the note with interest and attorney’s fees as therein stipulated.
On the defendant’s appeal the Court of Appeal “for the parish of Orleans reversed the judgment of the district court, and rejected the plaintiff’s demand.
On application of the plaintiff a rehearing was granted by the Court of Appeal; and, as no evidence had been admitted in the lower court to prove that the defendant had not in fact consented to the extensions of the time of payment of the note, the decree was amended so as to make it only a judgment of nonsuit against the plaintiff.
The case is before us on writs of certiorari and review, issued at the instance of the plaintiff, for final determination.
ppinion.
[1] The ruling of the district judge excluding the verbal testimony offered by the defendant was correct under the pleadings. The plaintiff acknowledged in his petition, and the memoranda on the note show, that the time of payment was twice extended; and, relying entirely upon the stipulation expressed in the note, whereby the indorser consented that time of payment might be extended without notice thereofj the plaintiff did not allege, and does not contend, that the defendant, as indorser of the note, gave any further consent to, or had actual notice of, either of the extensions that were granted to the maker of the note. In view of the defendant’s admission in her answer to the suit that she is an accommodation indorser of the note sued on, it is a matter of no importance how long the debt existed before this note was issued, or whether other notes of the same tenor and representing the same debt had been made by the debtor and indorsed by the defendant. The learned counsel for the defendant in their brief concede that the first extension of the time of payment, to the 1st of July, 1914, without notice to the indorser, did not release her from liability on the note. Their contention is that the consent of the indorser, expressed in the note, that time of payment might be extended without notice thereof, contemplated and permitted only one extension without notice to the indorser, and that therefore the second extension of the time of payment, to the 1st of January, 1915, without notice to the indorser, released her from any and all liability on the note.
[2, 3] The plaintiff’s answer to that contention is threefold: (1) That, under the Negotiable Instrument Law (Act No. 64 of 1904), particularly sections 29, 60, 119, 120, and 192 of the statute, an accommodation indorser of a promissory note is primarily, not secondarily, liable, and is not released by the payee’s granting to the maker an extension of the time of payment without the consent of, or notice to, such indorser; (2) that the indorser’s waiver of presentment for payment, demand, notice of nonpayment, and protest, as stipulated in the note sued on, has. the same effect as if those formalities had been complied with at the maturity of the note; that the effect of those formalities at the maturity of the note, or the previous waiver of them, is to fix'the liability of the indorser as an absolute and unconditional obligation, and that therefore, after such formalities have been complied with, or were previously waived, and the liability of the indorser became fixed, the extension of the time of payment, without notice to the indorser, did not release the latter from liability on the note; (3) that one who indorses a promissory note thereby consents to all of the stipulations which, on the face of the note, are expressly declared to be binding upon an indorser, and that therefore, although the defendant in this case is, as to the maker of the note, only an indorser, entitled to recourse against the maker if she *977 pays the note, she is, nevertheless, as to the payee, a solidary obligor, liable primarily for the debt.
The defendant contends that the note sued on is not a negotiable instrument, and therefore is not governed by the Negotiable Instrument Law (Act No. 64 of 1904). Except for the question whether the note sued on is governed by that statute, it would be of no importance whether this note is or is not a negotiable instrument, because it has never been negotiated or transferred by the original payee, who brings this suit. The defendant contends that any one of the following three stipulations or provisions contained in the instrument is sufficient to render it nonnegotiable, viz.:
(1) The consent that time of payment may be extended without notice thereof.
(2) “Should the maker of this note fail in business, ask a respite, or become a bankrupt before the maturity of this note, this note and all the said liabilities shall become and be immediately due and payable without demand or notice, notwithstanding any credit or time allowed the undersigned by any instrument evidencing any of said liabilities.”
(3) “At the maturity of this note, or when otherwise due, as above provided, any money, stocks, bonds, or other property of any kind whatsoever, on deposit or otherwise to the credit of the maker or any of the indorsers, on the books of said Commercial-Germania Trust & Savings Bank [where the note was payable], or in its possession, shall at once stand applied to the payment of this note, or any other indebtedness, unless it be otherwise paid.”
In support of the contention that the note sued on is not a negotiable instrument, the learned counsel for the defendant cite and rely upon the opinion rendered on rehearing in the case of the Hibernia Bank & Trust Co. v. Dresser, 132 La. 538-543, 61 South. 569-571.
Only one of the clauses that are said to destroy the negotiability of the instrument sued on in the present case was contained in the note in question in the ease cited; that is, the third clause quoted above, authorizing the application to the payment of the note of any money, stocks, bonds, or other property on deposit or otherwise to the credit of the maker or indorser on the books of the bank where the note was made payable at the maturity of the note. The other two clauses complained of in the note sued on in the present case, that -is, the consent that time of payment might be extended without notice thereof, and the stipulation that the note should become due and payable if the maker should fail in business or ask a respite or become a bankrupt before the maturity of the note, were not contained in the note in question in the case cited; hence it was not there decided that such clauses destroyed the negotiability of a promissory note. Other clauses or stipulations, such as (1) that the note should mature if the maker should fail, when called upon, to furnish additional security to the satisfaction of the holder of the note, and (2) that the securities described in the note and pledged to secure its payment were also pledged to secure any other obligation of the maker to the payee, were also said, in the opinion on rehearing in the Dresser Case, to destroy the negotiability of the instrument. But those clauses are not contained in the note sued on in the present case. It appears, therefore, that the only stipulation contained in the note sued on in this case that was said to destroy the negotiability of the note sued on in the Dresser Case, in the opinion on rehearing, is the clause authorizing the application or appropriation to the payment of the note at maturity of any money, stocks, bonds or other property on deposit or to the credit of the maker or indorser on the books of the bank where the note was made payable. No authority was cited in support of the opinion that such a clause rendered the note nonnegotiable. All that was said on that subject is contained in one brief sentence, to the effect that such a stipulation was an order to do an act in addition to the payment of money, which, under the stat *979 ute, rendered the note nonnegotiable. That doctrine, expressed by the author of the opinion on rehearing in the Dresser Case, was not approved by a majority of the members of the court as then constituted. The original opinion, concurred in by all except one of the members of the court as then constituted, was that the defendant, who had indorsed before delivery to the payee a promissory note reading, “We, the signers, indorsers, sureties, and all of us, in solido, promise to pay to the order of,” etc., was liable primarily or unconditionally, and thereby waived notice of dishonor of the note. On rehearing the decree holding the indorser liable was reinstated, the author of the opinion on rehearing assigning as the reason for reinstating the decree that the defendant was not entitled to notice of dishonor because he had indorsed the note sued on before it was issued, and had thereby become a surety on the note. But the opinion that the note was not a negotiable instrument was not concurred in by any other member of the court than the writer of the opinion on rehearing. The then Chief Justice, who had given his unqualified approval of the original opinion and decree, dissented on rehearing, saying:
“I am unable to arrive at the conclusion that the note is not negotiable.” See 132 La. 538, 61 South. 572.
The present Chief Justice, who also had not qualified his concurrence in the original opinion and decree, concurred only in the decree on rehearing. See 132 La. 538, 61 South. 571. The author of the original opinion concurred in the decree on rehearing, but for the reasons assigned in his original opinion. See 132 La. 538, 61 South. 571. Hie present senior associate justice dissented from, the original opinion and decree, and on rehearing wrote a lengthy dissenting opinion, expressing his view that the note sued on was a negotiable instrument. And it is worthy of note that since writing the opinion on rehearing in the Dresser Case the author of that opinion has written another on the subject, approved unanimously by the court as now constituted, saying that, where a promissory note contains the stipulation that the drawers and indorsers severally waive presentment for payment, protest, and notice of protest and nonpayment of the note, the indorser is unconditionally liable, and to this extent he becomes an unconditional debtor. See Atkins et al. v. Dixie Fair Co., 135 La. 622, 65 South. 762.
[4] Taking up in their order the stipulations which the defendant contends render the note nonnegotiable, we see no reason whatever for the contention that the indorser’s consent that time of payment, may be extended without notice thereof renders the note nonnegotiable. That stipualtion is not in conflict or inconsistent with any of the elements in the definition of a negotiable promissory note, as contained in section 184 of the Negotiable Instrument Law. It does not render the promise to pay conditional, or affect the fixity or determinability of the time of payment, or make the sum to be paid uncertain. It is true of all negotiable promissory notes that time of payment may be extended with the consent of all parties to it. If the time of payment be extended without the consent of an ordinary indorser, he is released from liability. But, whatever may have been said on this subject by the courts of other states, we see no reason whatever for the proposition that an indorser’s consent that time of payment may be extended without notice to him renders the note nonnegotiable.
The stipulation that the note shall become immediately due and payable if the maker should fail in business or ask a respite or become a bankrupt before the maturity of the note does not make the date on which payment must be made any the less fixed or determinable. The conditions under which *981 the note may become due and payable before the date of maturity stated in the note, that is, the maker’s failing in business, asking a respite, or becoming a bankrupt, are conditions over which the payee or holder of the note has no control. What is meant by the provision in section 4 of the Negotiable Instrument Law that an instrument payable upon a contingency is not negotiable and the haPi ming of the event does not cure the defect is that an instrument that stipulates no fixed or determinable future time at which it must be paid in any event, but is payable upon a contingency that may never happen, is not an unconditional promise to pay. What is meant by the provision that to be a negotiable instrument a promissory note must be payable at a fixed or determinable future time is that some date must be either fixed or determinable at which the holder of the note may insist upon payment, unless then it shall have been already paid. The second paragraph of section 4 of the statute provides that an instrument is payable at a determinable future time if it is made payable on or before a fixed or determinable future time specified therein; and the third paragraph provides that it is payable at a determinable future time if it is payable on or at a fixed period after'the occurrence of a specified event which is certain to happen, though the time of happening be uncertain.
In Chicago Railway Equipment Co. v. Merchants’ National Bank of Chicago, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349, it was held that a stipulated contingency by which a note might become due earlier than the date fixed did not affect its negotiability. To the same effect was the decision in Independent School District v. Hall, 113 U. S. 135, 5 Sup. Ct. 371, 28 D. Ed. 954. The Negotiable Instrument Law in that regard is only declaratory of a general rule of the law merchant that the negotiability of a note is not destroyed by a provision therein that it may become payable on the happening of a stipulated event over which the payee or holder has no control at an earlier date than the date first stated, on which, if not paid sooner, the note must be paid. On that principle it is settled beyond all controversy that a promissory note payable on a fixed date is not rendered nonnegotiable by a stipulation therein that it shall become due if default be made in the payment of an installment of interest or in the payment of another note of the same series. See list of decisions cited in 132 La. 538, 61 South. 573.
The next contention of the defendant is that the note was rendered nonnegotiable by the stipulation that any money, stocks, bonds, or other property on deposit or otherwise to the credit of the maker or of any indorser of the note at maturity should at once stand applied to the payment of the note, or any other indebtedness, unless otherwise paid. The contention is that that clause was an order or a promise to do an act in addition to the payment of money. We do not think it was. The stipulation, in the plainest language possible, was that, unless the debt should be otherwise paid at maturity, any money, stocks, bonds, or other property on deposit or to the credit of the maker or indorser should at once stand applied to the payment of the note. If the note was otherwise paid at maturity, the payee or holder had no right to the appropriation or application of any money, stocks, bonds, or other property to the payment of the note. Hence there was no order or promise to do any act in addition to the payment of money. Section 5 of the Negotiable Instrument Law provides plainly that, although an instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable, nevertheless the negotiable character of an instrument otherwise negotiable is not affected by a provision which gives the holder an election to require *983 something to be done in lieu of payment of money. The stipulation complained of in the case before us did not go so far as to give the holder of the note an election to require something to be done in lieu of the payment of money. If the maker or the indorser saw fit to pay the note at maturity, the payee or holder could not require either of them to do any act in Addition to the payment of the money. The payee or holder had the right to require something else to be done; that is, any money, stocks, bonds, or other property on deposit or to the credit of the maker or indorser to be applied to the payment of the note at maturity, in lieu of the payment of the note, if the maker and indorser had then failed to pay it. There is another provision in the Negotiable Instrument Law that indicates plainly that such a stipulation in a promissory note shall not render it nonnegotiable. Section 3 provides that, although a promise to pay only out of a particular fund is not an unconditional promise to pay, nevertheless an unqualified promise to pay, although coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, is an unconditional promise to pay, within the meaning of the act.
Our conclusion is that the instrument sued on was a negotiable promissory note, within the definition contained in the Negotiable Instrument Law, and that the provisions of that statute are applicable to this case.
The doctrines on which the Court of Appeal rested its judgment and decree on rehearing do not answer the contentions of the plaintiff in this case, and are not quite applicable. The first doctrine announced by that court is that an accommodation indorser is, within the meaning of the Negotiable Instrument Law (Act 64 of 1904) secondarily, and not primarily, liable. The question presented is not whether the accommodation indorser would be only secondarily, and not primarily, liable if she had not expressed her intention to be primarily liable, but whether any provision of the law or principle of public policy forbids an accommodation indorser to bind himself primarily liable to the payee of a negotiable promissory note. The second doctrine announced in the syllabus of the opinion of the Court of Appeal on rehearing is that an indorser, notwithstanding he has waived demand, notice of nonpayment, and protest, is nevertheless released if, after the maturity of the note, the holder, without the indorser’s consent, enter into a binding agreement with the maker granting additional time to the latter to discharge his obligation. The question presented is not whether an indorser’s waiver of demand, notice of nonpayment, and protest implies or carries with it the indorser’s consent that the payee or holder of the note may, without releasing the indorser from liability, enter into a binding agreement with the maker granting additional time to the latter to discharge his obligation. The question is whether an express stipulation in the note whereby the indorser consents that time of payment may be extended without notice thereof is binding upon the indorser. The first doctrine announced in the syllabus of the original opinion of the Court of Appeal is also inappropriate. The doctrine, as expressed by the court, is that one who puts his name on the back of a note reading, “We, the makers, indorsers, sureties, and each of us in solido, promise to pay,” is none the less an indorser or surety, and not a maker. The question presented is not whether the defendant in this case is an indorser or maker of the note, but whether, although she is only an indorser or a surety in so far as the maker is concerned, she is, as far as the payee is concerned, bound by the stipulations which, in the face of the note, are expressly declared to be binding upon the indorser. The only doctrine of law *985 expressed by the Court of Appeal that we consider appropriate to this case is that contained in the second paragraph of the syllabus of the opinion first handed down, on which the judgment and decree of the court originally rested. That doctrine, as expressed by the court, is that consent by a surety to the extension of the obligation without notice to him, embodied in the instrument itself, covers only one extension, and no more. If that is a sound principle of law, the defendant is not liable. If the doctrine is unsound, she is liable.
In support of the doctrine the Court of Appeal refers to three Indiana decisions, one Ohio and one New Hampshire decision. The Indiana decisions are not at all applicable to this case, nor is the Ohio decision. In the latter case the court held merely that, under a stipulation similar to that contained in the note sued on in the present case, the payee and the principal maker could agree upon one extension without affecting the liability of the surety; but it was not held that a second extension would have released the surety. In one of the Indiana cases it was held merely that such a stipulation in the note was binding for at least one extension. Our interpretation of the other two Indiana decisions is that, where the surety agreed to only one extension for a specified time, the agreement did not authorize another extension beyond the time specified. The New Hampshire decision seems to rest upon a principle that is entirely sound, but not appropriate to this case. The doctrine announced was that the stipulation in the note somewhat similar to the stipulation in the note sued on in the present case did not authorize the payee, by an agreement with the maker of the note, to extend the time of payment, and thereby keep the surety liable and prevent his paying the note and becoming subrogated to a right of action against the maker. Undoubtedly the stipulation in the note 'sued on whereby the indorser consented that time of payment might be extended without notice thereof did not deprive the defendant of her right, as indorser of the note, to pay it at maturity and become subrogated to an immediate right of action against the maker of the note. If the defendant, as indorser or surety for the maker, had offered, at the maturity of the note, to pay the debt and become subrogated to an immediate right of action against the maker, and if the payee had then insisted that her consent that the time of the payment might be extended gave him the right to enter into a binding agreement with the maker to extend the time of payment! and hold the indorser liable as long as the maker and payee might see fit, quite a different question would be presented. But the defendant in this case does not pretend that she was deprived of the right to put an end to the contract and become immediately subrogated to a right of action against the maker, at the maturity of the note or at any time thereafter, by paying the note.
Whatever may have been said on that subject by the courts of other jurisdictions, we cannot conceive of-any reasonable theory on which to hold that the indorser’s consent, as expressed in the note sued on, authorized the payee to grant the maker only one extension of the time of payment, however long, and did not authorize two extensions, however short. To maintain such a doctrine would lead to the anomalous conclusion that the indorser would not have been released if the payee had granted to the maker of the note, without notice to the indorser, one extension of the time of payment for one year, but that she would have been released by the granting of two extensions, for one month, or one week, or one day each. Our interpretation of the indorser’s consent that time of payment might be extended without notice thereof is that the payee and the maker of the note could agree to extend the payment from time *987 to time without notice to the indorser and without releasing her from liability, unless and until atl any time after maturity she saw fit to pay the note and become immediately subrogated to a right of action against the maker.
Although the defendant is, as to the maker of the note, only an indorser or a surety, entitled to recourse against the maker if she pays the note, nevertheless, as to the payee, she is primarily liable, in solido with the maker, as thoroughly and completely as if she had put her signature under that of the maker on the face of the note. In the very able and exhaustive briefs filed in this case we are unable to find any provision of law, and we know of no principle of public policy, that forbids an indorser of a promissory note to bind himself to all,the stipulations that are expressly declared on the face of the note to be binding upon an indorser. It cannot be presumed that one who has put his signature on the back of a promissory note did not first read or have knowledge of what; was written or printed on the face of the note. When this note was presented to the defendant for her indorsement, the instrument informed her that whoever would indorse the note would thereby become liable to the payee in solido with the maker, and would waive presentment for payment, demand, notice of nonpayment, and protest, all pleas of division or discussion, and would thereby consent that time of payment might be extended without notice thereof. With that information, and with full knowledge of the consequence, she indorsed the note. And now she asks to be released from her obligation merely because she was only an indorser, and not a maker, of the note, notwithstanding she declared, by indorsing the note, that it was as an indorser or a surety for the maker that she made herself primarily liable to the payee, in solido with the maker, and that it was as an indorser that she waived presentment for payment, demand, notice of nonpayment, and protest, all pleas of division or discussion, and consented that time of payment might be extended without notice to her.
Surely the stipulations which are expressly declared in the face of the note to be binding upon an indorser are as binding upon one whose signature appears on the back of the note as if the signature appeared upon the face, or as if the stipulations appeared above the signature on the back of the note. Section 109 of the Negotiable Instrument Law provides that notice of dishonor may be waived, either before the time of giving notice has arrived or after the omission to give due notice, and that the waiver may be either express or implied. Section 110 provides that, although a waiver written above the signature of an indorser binds him alone, if the waiver is embodied in the instrument itself, it is binding upon all parties.
Eaton & Gilbert in their work on Commercial Paper (section 116f), announce the rule to be, independent of the Negotiable Instrument Law, that a waiver of notice contained in the instrument is binding upon all indorsers; that such a waiver forms a part of the contract, and an indorser is deemed to have adopted the waiver by his contract of indorsement, and his liability becomes fixed by the dishonor of the bill.
Daniel on Negotiable Instruments (6th Ed.) vol. 2, p. 1244, § 1090, announces the rule to be that, when presentment of a promissory note at,maturity has been dispensed with by prior agreement between the parties, or, in other words, has been waived by the party entitled to require it, the holder is excused from his failure to make it. The author says that it would be a fraud (upon the holder to permit him to suffer by acting upon the assurance of the party to whom he looks as surety on the paper, and that, as prompt presentment is only a requirement for the benefit of the indorser of a promissory note, the *989 latter is himself the sole judge as to whether he will require it. On page 1246, § 1092, the author says that, if the waiver of presentment, protest, and notice is embodied in a promissory note, it enters into the contract of the indorser as well as that of the maker, especially if such a waiver expressly declares that an indorser shall be bound thereby.
In Moriarty v. Bagnetto, 110 La. 598, 34 South. 701, before the adoption of the Negotiable Instrument Law, it was recognized that a person might be bound only as an indorser and surety for the principal debtor, and at the same time be bound primarily and in solido with the principal debtor to the creditor or payee, and that in that situation the indorser or surety was not released from liability by an extension of the time of payment, of the debt granted by the payee or creditor to the principal debtor, without notice to the indorser or surety.
In Rey v. Simpson, 22 How. 341, 16 L. Ed. 260, it was held:
“Where persons placed their names as indorsers at the inception of the note, not as a collateral undertaking, but as joint promisors with the maker, they are as much affected by the consideration paid by the plaintiff, and as clearly liable in the character of original promisors, as they would have been if they had signed their names under the name of the other defendant upon the inside of the" instrument.”
Section 63 of the Negotiable Instrument Law declares that a person who places his signature on an instrument otherwise than as maker, drawer, or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity. It would indeed be difficult to find words more appropriate to indicate clearly that the intention of the defendant in this case, when she placed her signature on the back of this note, as an indorser for the maker, was to be bound in some other capacity, that is, primarily, and in solido, as far as the payee is concerned. The only theory upon which she could be considered released from liability by the extension of the time of payment without notice to her would be that an indorser cannot make himself liable primarily to the payee in solido with the maker.
Section 192 of the Negotiable Instrument Law declares that the person “primarily” liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay it, and that all other parties are secondarily liable. Under sections 119 and 120 of the statute it is only a person secondarily liable on a negotiable instrument who is released from liability by an agreement of the holder of the instrument to extend the time of payment without the consent of the party secondarily liable.
The learned counsel for the defendant cite the case of Dresser v. Hibernia Bank & Trust Co., 136 La. 327, 67 South. 15, in support of the proposition that an indorser, even though he expressly declares that he is bound in solido, is nevertheless only bound conditionally, or secondarily. The only point decided or at issue in that case was that a stipulation in a promissory note to the effect that the securities pledged to secure the payment of the note were also pledged to secure any other obligation of the maker did not amount to a pledge of the securities belonging to the maker to secure another indebtedness due by an indorser, notwithstanding that indorser had expressly declared in the note that he was liable to the payee in solido with the maker. In the course of the opinion it was said that the language of the note contained a recognition of the fact that, although all the parties whose names appeared upon it were bound in solido for its payment, there were indorsers, sureties, etc., as well as makers, on the note. In other words, it was recognized that a person whose signature appeared on the back of a negotiable promissory note, and who was, as to the maker, and within the meaning of the word “indorser,” as used in *991 the face of the note, only an indorser, would be liable to the payee primarily, in solido with the maker, if that obligation upon the indorsef was stipulated in the face of the note.
The learned counsel for the defendant cite many other decisions and opinions of text-writers bolding that an indorser of a promissory note, even though be be bound in solido to the payee, is nevertheless, in the strict sense of the word, an indorser, not a maker. There can be no dispute about that; but the question here is, not whether an indorser is a maker of a promissory note, but whether an indorser can.be an indorser in so far as his right to recourse against the maker is concerned, and at the same time be primarily liable to the payee, in solido with the maker. We see no reason why be should not be, if the instrument, on its face, clearly expresses that intention on the part of the indorser.
The learned counsel for the defendant quote from Brandt on Suretyship, § 510':
“The surety’s assumption of the character of principal must he clear before the courts will hold that he has waived his rights as surety; and, for the purpose of determining whether he has consented to be bound as principal,' the court examines the whole instrument and construes doubtful expressions in favor of his retaining the character of surety.”
The learned counsel for the plaintiff! also relies upon that quotation, and we’ think it is clearly favorable to bis contention. The surety’s assumption of the character of a solidary obligor, liable primarily for the payment of the note, is expressed as plainly as it could possibly be expressed.
It is said by the learned counsel for the defendant that the decision in Atkins v. Dixie Fair Co., 135 La. 622, 65 South. 768, to the effect that a stipulation in a promissory note whereby the indorser waives presentment for payment, nonpayment, protest, and notice of protest, renders the indorser unconditionally liable, is based upon the decision rendered in Union National Bank v. Grant, 48 La. Ann. 18, 18 South. 705, where it was held merely that the indorser’s waiving demand, protest, and notice of protest at the maturity of the note did not authorize the bolder of the note to release the maker, without, as a legal consequence, releasing the indorser from liability. But that decision that the waiver of presentment for payment, demand, notice of nonpayment, and protest is not in itself a consent on the part of the indorser that the maker may be released, or that time of payment may be extended without notice thereof, has no application here, where the indorser, besides waiving presentment for payment, notice of nonpayment, and protest, also expressly consented that time of payment might be extended without notice thereof.
The learned counsel for the defendant also rely upon the provision of article 3063, R. C. C., that the prolongation of the terms granted to the principal debtor without the consent of the surety operates a discharge of the latter. That is plain; but here the prolongation of the term granted to the principal debtor was with the consent of the surety. A more appropriate article is 3045, viz.:
“The obligation of the surety towards the creditor is to pay him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized, unless the security should have renounced the plea of discussion, or should be bound in solido jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors in solido.” (The italics are ours.)
Article 2106 is also very appropriate, viz.:
“If the affair for which the debt has been contracted in solido, concern only one of the coobligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities.”
[5] If this case were not governed by the provisions of the Negotiable Instrument Law, if the rights of the plaintiff and obligations of the defendant be tested by the pro *993 visions of the Civil Code, the articles quoted above plainly declare that a person may be only a surety as to his co-obligor in solido and at the same time be liable primarily to the common debtor.
Por the reasons assigned, the judgment of the Court of Appeal is annulled, and the judgment of the district court, decreeing the defendant liable to the plaintiff for the amount of the note sued on, with interest and attorney’s fees, as therein stipulated, is reinstated and affirmed and made the final judgment of this court. The defendant is to pay all costs in the district court, the Court of Appeal, and this court.
MONROE, C. J., concurs in the decree.