## Hartswick, to use, v. Hartswick, Executrix

*Lewis O. Harvey* and *Paul J. Smith*, for plaintiff.

*John G. Love, Cloyd Steininger*, and *Merrill W. Linn*, for defendant.

WALKER, P. J., August 16, 1938.—This is an action based upon a note date March 7, 1936, payable to the order of A. H. Hartswick, wherein it provides that "After date, I, we, or Either of Us, Promise to Pay to A. H. Hartswick or Order, One Thousand Eighty-four and 98/100 Dollars in *11* Equal, Consecutive Monthly Installments of $107.08 Each, on the Like Date of Each Month, the First Payable One Month After Date." This note

was signed by the "Produce Wholesalers By: Lee Tobin." On the back of the note appears the following: "With full Recourse, the Undersigned consenting that without notice to and without releasing the liability of the undersigned, the holder may extend time to or compound or release any rights against the maker." This was signed by "A. H. Hartswick, Indorser." The note was assigned by A. H. Hartswick to the C. I. T. Corporation.

A. H. Hartswick, the indorser and assignor, died on May 24, 1937, having first made and published his last will and testament, which was duly proven before the Register of Wills of Centre County, and letters testamentary were thereon granted on June 19, 1937, to Furl C. Hartswick, the executrix therein named.

A summons in assumpsit was issued by the above-named plaintiff against Furl C. Hartswick, executrix of the last will and testament of A. H. Hartswick, deceased, on December 13, 1937, setting forth that the suit was brought to recover the sum of $428.34 with interest from April 7, 1937, and an attorney's commission of 15 percent. Plaintiff's statement alleged that the note was the basis of the suit and that the C. I. T. Corporation had become the owner of said note by indorsement of the said A. H. Hartswick before maturity, without notice, in due course, and for a valuable consideration. The statement further set forth that C. I. T. Corporation, at the request of the said Lee Tobin, granted several extensions of said monthly instalments of said note, namely, the months of April, August, December, and January.

In answer to plaintiff's statement filed in the above-stated case, an affidavit was filed raising a question of law wherein it is set forth that the granting of the several extensions of said monthly instalments was a violation of the rights of defendant, A. H. Hartswick, an indorser, and that he was released from liability by reason of said extensions. Said affidavit of defense further sets forth "That the time for the April instalment was extended one month, the time for the August instalment was ex-

tended one month, the time for the December instalment was extended one month, and further extended another month by the C. I. T. Corporation."

There is nothing in plaintiff's statement which corroborates the statement that the December instalment was "further extended another month by the C. I. T. Corporation." If it is a fact, then by this affidavit of defense a question of fact is being raised which would require proof to establish it. For the purpose of determining the question raised by the affidavit of defense raising questions of law, the statement discloses the extension of time for the months of April, August, December, and January, and does not disclose that there was a second extension of the payment due in December.

In answer to the affidavit of defense raising questions of law, plaintiff takes the position that the indorser was not released by these extensions because by written statement appearing upon the note itself, A. H. Hartswick, indorser, agreed as follows:

"With full recourse, the undersigned consenting that without notice to and without releasing the liability of the undersigned the holder may extend time to or compound or release any rights against the maker."

If this agreement had not been executed, there is no question but that defendant would be released from any liability under said note because the Uniform Negotiable Instruments Act, as passed by the Legislature of Pennsylvania by the Act of May 16, 1901, P. L. 194, sec. 120, 56 PS §272, provides, inter alia:

"A person secondarily liable on the instrument is discharged. . . .

"6. By any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The question for consideration in the present proceeding is whether the agreement on the note itself signed

by the indorser was sufficient to protect the assignee of the note in its claim against the indorser, A. H. Hartswick, where four separate extensions of monthly payments have been made. The note in question is a note payable in 11 equal consecutive monthly payments. It was the four extensions of time to make the four distinct monthly instalment payments that counsel for defendant contends released defendant from liability. He admits that one extension was proper under the agreement, but avers that more than one was a violation of the agreement and released the indorser from liability. The language which is important in the consideration of this case is that the "holder may extend time to the maker." The courts, in referring to the language of the act of assembly which releases persons secondarily liable where there is an extension of time, unless controlled by a reservation, have stated that "the words of the Act of 1901, supra, require an 'express' reservation of recourse against one secondarily liable, yet, when the reasons for this statutory provision are understood, it becomes plain that courts should not be overly particular as to the precise phraseology of such a reservation, so long as it may reasonably be construed as complying with the requirements of the act, which merely announce a well established rule": First National Bank of Hanover v. Delone, 254 Pa. 409, 420.

Does the language, therefore, if reasonably construed, amount to a compliance with the requirements of the act? The note involved here is one in which 11 distinct amounts come due at 11 different times. To hold that, if time were extended to make one of the payments, then all rights under the agreement were exhausted and would release the indorser if a second extension of another payment when it was due were granted, would not only defeat the purpose which was in mind when the note in question was executed and the payments arranged as therein stipulated, but also would be putting a very restricted mean-

ing upon the language which was used, namely, "the holder may extend time to the maker." The language used certainly could be construed to cover more than one granted extension. It states that "the holder may extend time to the maker." The word "extend" lends itself to great variety of meanings, which must in each case be gathered from context: 2 Words & Phrases 13 (4th series). "Extend" has been defined "to draw forth; to stretch; to prolong; to protract; to continue": 3 Words & Phrases 2616 (1st series).

In order to arrive at the intention of the parties, the context of the instrument wherein the word is used will be construed and the objects to be accomplished will be taken into consideration.

Prior to the passage of the Act of 1901, the rule was well established that an extension of time granted by the holder of the note to the maker would release the person secondarily liable, unless he agreed to such extension. This law was set forth in the Act of 1901 and was for the protection of the party secondarily liable. Any provisions in the law to modify it would, naturally, be against the interests of the person secondarily liable and would be in favor of the holder of any instrument. A provision was inserted in the Act of 1901, which has been quoted above, which permitted the person secondarily liable voluntarily to waive the rights which the law had thrown around the person secondarily liable for his protection. By the insertion of that particular provision, the requirement of that which was to be performed by the holder of a note was relinquished, and the holder relieved from the burden made necessary by the rigid requirement of the mercantile law in order to secure the continued liability of the indorser. This waiver, therefore, is obviously for the benefit and to the advantage of the holder. The indorser in signing the waiver or agreement would know that he was relinquishing certain rights which he had and also agreeing to confer upon the holder the right of the debtor to receive further extension of credit, and that the obli-

gation which he entered into would be given added life through extension of time of payment, thus obviating the necessity of renewals. Incidentally, the stipulation is at times a benefit to the indorser because it permits the granting of grace to the maker on the latter's application; when otherwise pressure for payment might come inconveniently upon both maker and indorser. Particularly is this true when you take into consideration that this is a contract where the payments are on an instalment basis, and involves the peculiar circumstances and purpose surrounding a transaction of this nature.

As stated before, the context of the written obligation, the intent of the parties, and the nature of the transaction should be taken into consideration in order to arrive at a proper conclusion. Here was a note given, which provided for its payment in 11 equal consecutive monthly instalments, each payment to be made on the like date of each month subsequent to the first payment, which was to be made one month after the date of the obligation. The indorser had full knowledge of the nature of the transaction, realizing that there would be payments due at different times and the possibility might arise that it would be inconvenient for the maker to arrange a number of payments at the respective times they might come due. The form of the note has been adopted in order to save the necessity of having 11 distinct notes. Each payment is more or less a distinct obligation in itself. This method of doing business has become quite general, and experience indicates that the payments are not always made when due, which would throw some light on the intent of the parties when the arrangement was entered into which is the basis of this suit, and an interpretation of the word "extend" in the light of the context of the obligation and the nature of the transaction would lead one to the conclusion that the language used, if reasonably construed, amounts to a compliance with the requirements of the Act of 1901, and the party

secondarily liable by the agreement entered into had waived his rights and that the granting of four extensions would not release him from liability for the unpaid portion of said obligation.

Counsel for defendant in his brief has referred to the case of Tuten v. Bowden et al., 173 S. C. 256, 175 S. E. 510, 94 A. L. R. 1443. A reading of this case, however, shows that the agreement entered into used the language of "any extension of time". The court held that the use of the word "any" in said contract limited the extension to one. In other words, the controlling factor in the determination of the conclusion arrived at by the court in that case was the use of the word "any". However, other courts in other States have held to the contrary so far as this particular language is concerned: Pioneer Const. Co. et al. v. First State Bank, 60 Okla. 123, 158 Pac. 894; Winnebago County State Bank v. Hustel, 119 Iowa 115, 93 N. W. 70. In the consideration of this case, as well as all other cases, the actual language used plays a very important part in arriving at a conclusion. These particular cases last referred to are dissimilar from the instant case in that the word "any" does not appear in the agreement which is the basis of the suit at bar.

Counsel for defendant has also referred to the case of Rochester Savings Bank v. Chick et al., 64 N. H. 410, 13 Atl. 872. A reading of this case discloses a contract dissimilar to the one involved here, and facts surrounding the transaction which are also dissimilar.

In the case of Bonart v. Rabito, 141 La. 970, 76 So. 166, and the case of State National Bank of Fort Worth v. Vickery (Tex. 1918), 206 S. W. 841, where the language used was that "time of payment may be extended", the courts held that more than one extension did not release the party secondarily liable.

None of the cases which have been referred to on briefs of both sides shows a set of circumstances similar to those involved in the present suit. It is the opinion of the court, after careful consideration of the respective posi-

tions as presented by the parties to this suit, that defendant is not released by the granting of the four extensions to the maker of the obligation involved in this suit.

### Decree

And now, to wit, August 16, 1938, the questions of law raised by defendant in her affidavit of defense are hereby dismissed at her cost, with the further order that she be permitted to file an affidavit of defense as to the facts within a period of 15 days from the time defendant or her attorney of record receives notice of this decree.