**Succession of GRAVOLET (MERCANTILE CREDIT CORPORATION, Intervener).**
**No. 17249.**

Court of Appeal of Louisiana. Orleans.
Jan. 9, 1940.

Rehearing Denied Feb. 26, 1940.

Writ of Certiorari Denied April 1, 1940.

Prowell & McBride, of New Orleans, for appellant.

Oliver S. Livaudais, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff, Mercantile Credit Corporation, filed this suit in the succession proceeding of Anson Gravolet, Mrs. Anson Gravolet, the widow, being the testamentary executrix of that estate. The claim is based on a promissory note made by S. N. Haas and Mrs. J. Haas to their own order and by them indorsed and indorsed also by Anson Gravolet. The note is for $1,121.44, is dated November 9, 1937, is made payable ninety days after date, and is secured by the pledge—evidenced by indorsement—of two certain chattel mortgage notes, one for $600 made by S. N. Haas and the other for $672 made by Mrs. J. Haas. Each of these two chattel mortgage notes is secured by mortgage on a vessel or fishing boat, one owned by S. N. Haas and the other by Mrs. J. Haas. Both said mortgage notes were owned by Gravolet and both were pledged as above set forth. Execution of the note sued on and the fact that it was indorsed by the deceased, Gravolet, and that it has not been paid, are admitted, but liability is resisted on several grounds.

The first contention of the executrix is based on the fact that, when she qualified as executrix of the estate of her deceased husband, she notified the present plaintiff, Mercantile Credit Corporation, that the two boats, which were secured by the mortgages represented by the notes which had been owned by Gravolet and which had been pledged to secure the note herein sued on, were lying in a canal at Pointe-a-la-Hache, without care or shelter, and were rapidly deteriorating, and that the said Credit Corporation not only failed to foreclose on the said vessels and failed to afford any protection thereto, but, in fact,

granted to the makers of the note an extension of time within which they might make payment.

The executrix calls attention to the fact that, on the reverse of the note sued on, the pledge of the two mortgage notes precedes the indorsement of her deceased husband, and she maintains that the action of the Credit Corporation in not seizing the vessels and in granting to Mr. and Mrs. Haas an extension of time in which to make payment amounted to a release of the said security and, pointing to Section 120 of the Negotiable Instruments Act, No. 64 of 1904, which provides that a person secondarily liable is discharged by the discharge of a prior party, and pointing, also, to the same section of the act which provides that a person secondarily liable is released "by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument", maintains that, from the said acts of the Mercantile Credit Corporation, there has resulted a release of the subsequent indorser.

Defendant further contends that the holder of the note has released from liability the Estate of the deceased Gravolet by consenting that the engine of one of the boats might be removed from it and placed in the other boat. But plaintiff maintains that it was authorized to agree to this change by a stipulation contained in the note sued on and which stipulation provides that "the property hereby pledged may be exchanged or surrendered from time to time without notice to or assent from any party hereto, and without in any manner releasing or altering their obligations hereunder"; and plaintiff further maintains that the record shows conclusively that the change redounded to the benefit of all parties and worked no prejudice against anyone.

The defendant, as a further contention that the Estate of Gravolet was released from liability, calls attention to the fact that the plaintiff corporation, although it did not act promptly on her request to foreclose the mortgages on the two boats, did later bring suit against the makers of those mortgage notes and did seize the two boats which were mortgaged and then later made an agreement with the two mortgagors that they might be appointed keepers of the respective boats and might operate them and turn over the net proceeds of the operations as payments on account of the

principal note, and defendant maintains that, in so doing, plaintiff, in effect, released the two said vessels.

In the court below there was judgment for defendant estate and plaintiff corporation has appealed.

The questions presented, then, may be restated as follows:

(1) Did plaintiff release the Estate of Gravolet from liability by not complying with the demand of the executrix that the chattel mortgages be at once foreclosed?

(2) Did plaintiff release the said Estate when it granted to Mr. and Mrs. Haas extensions of time for the payment of the principal note?

(3) Did plaintiff release the Estate from liability when it instructed the sheriff to name Mr. and Mrs. Haas as keepers of the boats which had been seized and allowed the said owners of the vessels to operate them under the so-called agreement of settlement?

(4) Did plaintiff release the said Estate from liability when it consented to the removal of the engine from one of the vessels and its installation in the other.

When we consider the first question —whether a release resulted from the failure of plaintiff to heed the demand of the Executrix that the two vessels be immediately seized—we first notice that the note sued on contains the following stipulation: "All parties hereto hereby severally waive presentment for payment, demand, notice of non-payment, protest, and all pleas of division and discussion, and agree that the payment hereof may be extended from time to time, one or more times, without notice, hereby binding themselves, in solido, unconditionally and as original promisors, for the payment hereof, in principal, interest, costs, and attorney's fees."

Gravolet, when he endorsed the note containing this stipulation, became bound thereby as fully as though he had been a maker of the note. In Bonart v. Rabito, 141 La. 970, 76 So. 166, 172, the Supreme Court said: "Although the defendant is, as to the maker of the note, only an indorser or a surety, entitled to recourse against the maker if she pays the note, nevertheless, as to the payee, she is primarily liable, in solido with the maker, as thoroughly and completely as if she had put her signature under that of the maker on the face of the note. In the very able and exhaustive briefs filed in this case we are un-

able to find any provision of law, and we know of no principle of public policy, that forbids an indorser of a promissory note to bind himself to all the stipulations that are expressly declared on the face of the note to be binding upon an indorser. It cannot be presumed that one who has put his signature on the back of a promissory note did not first read or have knowledge of what was written or printed on the face of the note."

Therefore, had Gravolet lived, he could not have been heard to demand that other securities be proceeded against first. Nor can his executrix so demand now. We are shown no authority which justifies the view that in such case an indorser may require that other indorsers, or other securities, be first proceeded against. In fact, the reason for the insertion of the above-quoted provision is to give the note holder the absolute right to determine for himself just when he shall proceed against any indorser, or against any security, and to avoid the possibility that any subsequent indorser may require him to first proceed against a prior indorser.

The rule on the subject is stated in Corpus Juris, Vol. 8, Bills & Notes, page 450, as follows: "In the absence of a statute, or a special agreement, an ordinary indorser of a negotiable bill or note is not discharged from liability by mere delay or refusal on the part of the holder to commence or to prosecute a suit against the maker or acceptor for any period short of that fixed by the statute of limitations, where the indorser's liability has been duly fixed by demand, protest, and notice, although the maker or acceptor may become insolvent during such delay * * *".

The second contention is that a release of Gravolet's indorsement resulted from the extension granted to Mr. and Mrs. Haas. But the note itself contained the express stipulation that it might be "extended from time to time, one or more times, without notice". Surely the indorsers are bound by such a stipulation.

In Bonart v. Rabito, supra, a stipulation that the holder might grant to the maker an extension was held to be binding upon the indorser and to prevent her from claiming that a release had resulted from the extension. It was also held there that a stipulation that an extension may be granted is sufficient to warrant the granting of several extensions. Note the following

language from that case: "* * * Our interpretation of the indorser's consent that time of payment might be extended without notice thereof is that the payee and the maker of the note could agree to extend the payment from time to time without notice to the indorser and without releasing her from liability, unless and until at any time after maturity she saw fit to pay the note and become immediately subrogated to a right of action against the maker."

We conclude that the granting of the extension to the makers did not result in the release of the indorser.

█ In considering the third contention of plaintiffs to the effect that a release resulted when plaintiff, having sued Mr. and Mrs. Haas and having seized the two vessels, permitted them to be named as keepers of the said vessels and did not proceed to obtain judgments against them, we must consider carefully the facts which the record discloses. It is true that plaintiff did not immediately heed the demand of the executrix that the two vessels be seized. But, as we have already shown, they were under no obligation to do so. Later they thought it advisable to seize the two vessels and they brought separate suits, one against Mr. Haas and the other against Mrs. Haas, and required the sheriff to seize the two boats. It was at this time that they discovered that the vessels were not in good condition and would probably have brought very little, if anything, at sheriff's sale, and Mr. and Mrs. Haas therefore suggested to them that they be permitted to take possession of the said vessels to repair them and to put them into condition and to operate them in the business for which they were suited. It was then that the so-called "agreement of settlement" was entered into. This agreement reads as follows:

"Agreement.

"This agreement of settlement made and entered into this 5th day of July, 1938, by and between Mrs. Juliette Haas, Sidney Haas and Mercantile Credit Corporation.

"Sidney Haas and Mrs. Juliette Haas admit their indebtedness to the Mercantile Credit Corporation, in the sum of twelve hundred twelve and 55/100 dollars ($1212.55), plus Court costs and ten per cent (10%) Attorney's fees. The Mercantile Credit Corporation agrees to have Sidney Haas and Mrs. Juliette Haas appointed as the keepers of the vessels "Hope"

and "Rover" in the above numbered and entitled suits. Sidney Haas and Mrs. Juliette Haas agree to put the above named vessels into working condition immediately and without delay; further agree to pay the entire amount now due to the Mercantile Credit Corporation on or before March 1, 1939, together with interest at the rate of eight per cent (8%) per annum from the date of this agreement.

"In the event said amount is not paid on the above date, the Mercantile Credit Corporation reserves the right to take a judgment in the above suits.

"Sidney Haas and Mrs. Juliette Haas agree to pay to the Mercantile Credit Corporation all monies and receipts from the working or renting of the said vessels, "Rover" and "Hope", after deducting all necessary working expenses; this amount is to be paid only until the full amount as specified above has been paid in full.

"(original signed)      Sidney Haas
                "Mrs. Juliette Haas
        "Mercantile Credit Corporation
        "By: Prowell and McBride, attys.,
           "Per Oswald W. Viosca."

It will at once be noted that the plaintiff did not release the vessels from seizure, did not discharge the obligation of Mr. and Mrs. Haas and that all, in fact, that the plaintiff did was to agree not to take judgment against these parties until the time fixed in the agreement. And it will also be noted that, in making the agreement, plaintiff secured the obligation of Mr. and Mrs. Haas to place the vessels in condition and to pay over any net amount which the vessels might earn, which would be credited on the obligation of Mr. and Mrs. Haas, and therefore would redound to the benefit of the Estate of Gravolet. Since we have shown there was no obligation on the part of plaintiff to bring suit against Mr. and Mrs. Haas, or to seize the vessels, it necessarily follows that there was no obligation to proceed to final determination with the suit which they did bring. We do not see that in any way, or to any extent, their action in permitting the sheriff to name the owners as keepers of the vessels has prejudiced anyone.

█ While we have been shown no law and no jurisprudence in this state concerning the question of whether a debtor in solido is released by the failure of the creditor to pursue to final determination a suit which he may have brought against

other solidary debtors, and, while we find nothing in the negotiable instruments law on the subject, Pothier discusses the question in his treatise on Obligations (Evans Translation, Vol. 1, p. 133) and says:

"These effects are, 1st. That the creditor may recover from which of the debtors he pleases, by action, if the debt only lies in action: or by distress, if it lies in execution, the whole that is due; this is a necessary consequence of each of the debtors being such for the whole.

"I do not think that the debtors would have even the benefit of division; that is to say, that anyone from whom the creditor makes his demand may be allowed, upon offering his own part, to require that the creditor should proceed against the others for their respective parts, supposing them to be solvent. The acts of notaries commonly contain a clause renouncing this benefit, but even if there is no such clause, I do not think that it would be allowed.

"Observe, that the choice which the creditor makes of one of the debtors against whom he exercises his pursuits, does not liberate the others until he is paid: he may discontinue his pursuits against the first, and proceed against the others; or if he pleases he may proceed against them all at the same time."

The fourth and final question for consideration results from defendant's contention that the obligation of the indorser was released by the consent of the plaintiff that the engine might be taken from one of the boats and placed in the other.

The note sued on contains the stipulation, as we have shown, that the "property hereby pledged may be exchanged or surrendered from time to time without notice to or assent from any party hereto, and without in any manner releasing or altering their obligations hereunder". Furthermore, the record shows beyond any possible doubt that the security furnished by the two vessels was enhanced in value by the substitution and that no possible prejudice to anyone resulted therefrom.

Counsel for defendant confidently relies upon the doctrine announced in the syllabus of Wyatt v. Buckley et al., La.App., 174 So. 387, to the effect that, "where chattels mortgaged to secure notes were released and sold by holder of notes without authorization and consent of heirs of indorser of notes, liability of heirs was discharged to extent of value of chattels sold". But a reading of that case shows that there was a genuine release of security, whereas here there was no release at all. The plaintiff merely failed to proceed against other securities until after first proceeding against the present defendant. The agreement which the plaintiff made for the keeping of the vessels by the owners was not a release of the vessels and it was not a release of the owners. It was merely an agreement to temporarily suspend proceedings against those owners and from that agreement no harm resulted and no security was released.

We therefore feel that nothing that the plaintiff has done can be pointed to as effecting the release from liability of the Estate of Gravolet, and it necessarily follows that the judgment must be reversed and plaintiff granted the relief prayed for.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff, Mercantile Credit Corporation, and against Mrs. Anson Gravolet, Testamentary Executrix of the Estate of Anson Gravolet, in the full sum of $1,121.44 with 8 per cent, interest thereon from February 26, 1938, until paid, and with 10 per cent. attorney's fee on the whole and for all costs.

Reversed.