The defendant, Oil Field Supply and Scrap Material Company, a commercial co-partnership composed of J.H. Fuhrer and E.E. Wellin, residents of Rapides Parish, on May 15, 1940, sold to Lee Avenue Ice Company, owned solely by T.D. Livingston, resident of Ouachita Parish, certain chattels and to evidence the unpaid portion of the price, accepted the purchaser's note payable in installments over a period of twelve months. To secure payment of the note, the purchaser executed in favor of the seller and the future holders and owners of the note a mortgage on the chattels, which was duly recorded. Plaintiff acquired the note from defendant on its endorsement with recourse, and is a holder in due course. The maker of the note failed in business after making four payments thereon and thereafter ceased payments.
Plaintiff instituted this suit against said partnership and its two members to recover judgment in solido for the balance due on the note with interest and attorney's fees, reserving its rights against the maker. The note is attached to and made a part of the petition. It contains the following clause:
"We, the makers, and endorsers of this note, hereby waive presentment, demand, protest and notice of non-payment; and the endorsers and sureties hereto agree to extensions of the time of payment hereof without notice to them of such extensions."
The same language practically is printed on the reverse side of the note above the endorsement. Plaintiff ignored the chattel mortgage.
Defendants take the position that because of the inaction and alleged negligence and laches of the plaintiff they have been released from liability under said endorsement. Their defenses are in extenso covered by several articles of their answer and amended answer, which we paraphrase, viz.:
That the maker's default in payments was not made known to defendant partnership by plaintiff until May 15, 1941, approximately eight months subsequent to default, prior to which time, according to that advice, the mortgaged property had been seized and sold for rent privilege, which, the advice also stated, primed the chattel mortgage; that they are informed and believe that plaintiff had actual knowledge that the chattels were seized for rent prior to their sale by the sheriff; that it was plaintiff's legal duty to have intervened in the suit and otherwise asserted its rights under the chattel mortgage and thereby protected itself and defendants against loss therefrom; that its failure to notify defendants of the maker's default and of the levying of said seizure, deprived defendants of the right and opportunity to take legal and appropriate steps to protect themselves from loss from their liability on the note; that when sold for rent said chattels had a value equal to the balance due on the note.
Defendants do not deny that the referred to lessor's privilege primed the chattel mortgage, nor is it alleged that the chattels' value was in excess of the amount of rent due. It is inferentially said that plaintiff's tardy action in the respect mentioned resulted in financial loss to defendants.
Plaintiff moved to strike from the answer the paraphrased articles, basing its right to the relief sought upon the above quoted waivers in the face and on the reverse of the note. The motion was sustained, whereupon plaintiff moved for judgment upon the face of the pleadings. This motion was also sustained and judgment rendered and signed as prayed for, from which defendants appealed.
Defendants complain firstly of the court's action in sustaining the motion to strike, arguing that such motions have no place in our pleading and practice. This position is well taken. It is supported by settled jurisprudence of the state. Stanley, *Page 817 
Atty. Gen., v. Jones, 197 La. 627-649, 2 So.2d 45; State ex rel. Sutton et al. v. Caldwell, Mayor et al., 195 La. 507,197 So. 214; Perez, District Attorney, v. Meraux, District Judge,195 La. 987, 197 So. 683; Babst v. Hartz et al., 161 La. 427,108 So. 871, 872.
In this last case the court, referring to that part of the answer against which the motion to strike was leveled, said:
"The matter thus alleged was set up as a defense to plaintiff's suit, and it is not permissible to strike out from any pleading any pertinent matter couched in language not offensive. If the defense was not sufficient in law, plaintiff might have taken a rule for judgment upon the petition and answer. Act 300 of 1914, § 1, par. 4, p. 612. Not having done so, the defendant had the right to have her defense passed upon in due course and plaintiff was therefore not entitled to have it stricken out."
As early as 1845 the Supreme Court frowned upon the practice of striking from answers defenses therein set up even though such defenses be not responsive or pertinent. Welsh v. Barrow et al., 9 Rob. 535.
Therefore, since the motion to strike was erroneously sustained the efficacy of the motion for judgment must be determined from the status of the pleadings prior to filing the motion to strike. If the defenses set up are not pertinent but impotent as against plaintiff's demand, of course, testimony to support them may not be received; and, therefore, plaintiff would be entitled to judgment on the original pleadings.
Defendants' counsel suggests that the logical course for this court to follow, should the lower court's ruling on the motion to strike be reversed, is to remand the case so that the motion for judgment may be passed upon without regard to the motion to strike. Evidently, the lower court was of the opinion that the defenses urged to the merits of the demand were not pertinent nor well founded in law, and even if true, plaintiff's right to recover judgment would not be affected; hence its action on the motion to strike. It follows, as a logical sequence, the motion for judgment should have been and doubtless would have been sustained even though the motion to strike had not been filed and urged. In view of this situation it would be a useless consumption of time and would incur unnecessary costs to remand the case to the end that the motion for judgment again be passed upon and another appeal be prosecuted on a record not unlike the present one, save another ruling of the court on the motion for judgment. The foregoing is said in view of our own opinion that plaintiff was entitled to judgment on the face of the petition and answers.
Defendant's endorsement of the note superinduced a solidary obligation with the maker. Allain v. Longer, 4 La. 151; Bonart v. Rabito, 141 La. 970, 76 So. 166.
Such relation arises when all obligors are bound to performance of the same thing. Civil Code arts. 2088, 2091; Act No. 64 of 1904, Section 66 (Nil).
And, giving due consideration to the waivers contained in the note, the endorser's obligation became primary, unconditional, and co-extensive in legal effect and contemplation with that of the maker quoad future holders in due course. The same legal principles as regard release from liability of the maker, apply with equal force in these circumstances, to the endorser. Bonart v. Rabito, supra.
Plaintiff, as the holder of the note, was not legally obligated to look to the mortgage security to any extent for its payment. It was optional with it whether the mortgage be foreclosed or the personal responsibility of all persons bound on the note relied upon for its payment. The maker could not, as a condition precedent to the fixing of his liability, require foreclosure of the mortgage; and neither could the endorser.
Our brothers of the Orleans Circuit, in Succession of Gravolet, La.App., 193 So. 218, 220, considered and discussed the questions now confronting us. In that case, Gravolet, the deceased, had endorsed the note sued on and had pledged as collateral security therefor two chattel mortgage notes of other persons which he had also endorsed. After Gravolet's death the executrix of his succession demanded that the holder of the chattel mortgage notes foreclose thereon. This was not done. Suit was thereafter instituted on the primary obligation. The executrix resisted same on the ground that Gravolet and his succession had been released from liability because of the holder's inaction and refusal to foreclose on the collateral notes after *Page 818 
being requested to do so. The defense was rejected. The court quoted approvingly from Bonart v. Rabito, supra, and added:
"Therefore, had Gravolet lived, he could not have been heard to demand that other securities be proceeded against first. Nor can his executrix so demand now. We are shown no authority which justifies the view that in such case an indorser may require that other indorsers, or other securities, be first proceeded against. In fact, the reason for the insertion of the above-quoted provision is to give the note holder the absolute right to determine for himself just when he shall proceed against any indorser, or against any security, and to avoid the possibility that any subsequent indorser may require him to first proceed against a prior indorser."
The prevailing rule on the subject is given in 8 American Jurisprudence, 470, § 819, as follows:
"It appears to be well established that apart from an express statutory provision in that regard or an agreement between the parties (or possibly circumstances creating some controlling equity), the mere failure or delay on the part of the holder of a note to enforce collateral security available to him is not of itself sufficient to operate as a release of an indorser of the note from liability thereon. This rule applies to accommodation indorsers as well as to indorsers for value."
The rule is expressed in 10 Corpus Juris Secundum, Bills and Notes, § 300, p. 783, thusly:
"Since the holder of a note, in the absence of a statute or a special agreement, owes an indorser or an assignor no duty to exercise diligence to collect the debt from the maker, it has been held that, in the absence of a statute or special circumstances making prompt action a duty, mere laches in not enforcing collateral security or a mortgage given to secure the debt, short of such as will cause a bar under the statute of limitations, will not release an indorser nor an assignor, since, if the indorser wishes to have the collateral security or mortgage enforced, his remedy is to pay the note and then enforce the security himself. Thus there is no legal obligation on the holder of a note first to endeavor to collect it out of mortgaged property before bringing suit against an indorser, although the holder had notice and knowledge that the mortgagor intended to remove the property out of the state, and the holder has no duty to save the property from a sacrifice sale under any prior deed of trust."
Defendants' assiduous counsel concedes that an endorser is bound by waivers of the character mentioned and may not complain if additional time is granted the maker or makers in which to pay, if the right to do so is stipulated in the note. He also concedes the law to be that the holder of a chattel mortgage note may refuse to foreclose the mortgage as a means of collecting the note and not thereby impair the right to sue on the note as a personal obligation. But he argues that the facts of the present case remove it from the scope of the admitted rule. It is argued that in the Gravolet case the succession through its executor knew that the makers of the collateral notes had defaulted in payments and knew that the holder of the notes had refused to foreclose the mortgages securing same, whereas, in the present case, the endorser did not know of the maker's default nor did it know that the affected chattels had been seized for rent; that plaintiff's failure to keep it advised of developments and to intervene in the landlord's suit, amounted to a "passive release" of the chattels from the mortgage and a release of the endorser. The case of Wyatt v. Buckley et al., La.App., 174 So. 387, is cited and relied upon. The case is not apposite. It was held therein, and correctly so, that the voluntary release or destruction of collateral security by the holder of an obligation to pay, released those liable on the primary obligation to the extent of the value of the lost or destroyed collateral. In the present case, it appears that the collateral was lost to one acquiring a superior lien thereon and its diversion for the benefit of the superior lienor accomplished by forced sale.
Appellants also cite Interstate Trust Banking Company v. Young et al., 135 La. 465, 65 So. 611, as analogous. The facts of the case sustain the principle discussed in the Wyatt case, supra, but are not different from the facts of the case at bar.
The judgment appealed from is hereby affirmed with costs. *Page 823